**Allen N. BRUNWASSER, in his own right and Ina Brunwasser, a minor, etc., Appellants,**

**v.**

**Albert F. SUAVE, D. R. Hale, Richard Morris, Harry Harding and Arthur R. Pomponio individually and t/a King Arthur's Court, Appellees.**

**No. 12066.**

United States Court of Appeals Fourth Circuit.

Argued May 10, 1968.

Decided July 16, 1968.

Allen N. Brunwasser, appellant, pro se.

Harry P. Friedlander, Arlington, Va. (Marshall H. Brooks, Arlington, Va., on brief), for appellee, Mark P. Friedlander, Jr.

Before SOBELOFF, WINTER and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

To Lawyer-Appellant Allen N. Brunwasser of Pittsburgh, Pa., life is a battle. His latest skirmish with which we are concerned is merely a sequel to his knockout victory over King Arthur's Court Motel in Arlington, Virginia. It all began on July 13, 1965, when King Arthur's Court, unfortunately as it turned out, rented a room to Brunwasser. After spending the night and transacting his Washington business the next day, Brunwasser returned to the motel some three to five hours after the posted check-out time, vacated his room and offered to pay one night's lodging. When the desk clerk protested the late departure, battle was joined. After some unpleasant words, Brunwasser departed the premises without paying the first night's lodging, not to mention any premium for staying over. Somewhat foolishly as it turned out, but not unreasonably as it seemed at the time, the desk clerk caused Brunwasser to be stopped by Arlington police officers as he proceeded along Lee Boulevard. He was put under technical arrest, detained ten minutes, and then allowed to proceed on his return to Pittsburgh. Charged with defrauding an innkeeper, Brunwasser was convicted in the lower state court and promptly appealed to a higher state court. At that point the motel decided to give it up as a bad job and further prosecution was discontinued. We are advised in oral argument that under Virginia law and procedure the effect was exactly the same as one of acquittal. The foreseeable result occurred. Brunwasser sued the owners of the motel and the Arlington policemen in the United States District Court for false arrest. He employed a skilled attorney, Mark P. Friedlander, Jr., who prosecuted his civil action with remarkable success, obtaining a jury verdict against the motel and the policemen in the sum of $3,500.[1] Although the verdict seems to us excessive in view of the circumstances and the limited period of detention,[2] the district judge entered judgment upon it, and no appeal was taken. Liability carriers for the motel and the policemen then issued checks for the total amounts of the judgments in the customary manner, i. e., payable to Brunwasser and his counsel of record, Mark P. Friedlander, Jr. Thus the stage was set for the second vendetta.

After the lapse of many months, it became apparent to counsel for the losing defendants that the checks would not be cashed due to a dispute between Brunwasser and his attorney as to what fee, if any, counsel might be entitled to have. The motel and the policemen[3] moved the court for permission to pay the $3,600 into the registry of the court in complete discharge of the obligation of the policemen and the motel under the prior judgments, and the motions were allowed. Thereafter, on July 14, 1967, Mark P. Friedlander, Jr. moved the court to enter an order allowing him the sum of $1,000 from the funds held in the registry of the court for services rendered as attorney in the suit against the motel and the policemen[4] and notified Brunwasser that he would bring the motion on for hearing and determination on August 25, 1967, at 10 a. m.

On August 25, 1967, Brunwasser and Friedlander appeared before the United States District Judge. Brunwasser took the position before the court that it had no jurisdiction to permit the money to be paid into court and, secondly, that Friedlander had waived any right at all to a fee "by his arbitrary and coercive conduct" in refusing to endorse the checks without being assured that he would receive a portion of the proceeds.

1. There was a companion suit filed in the name of Brunwasser's minor daughter who was with him at the motel. The jury returned a verdict for her in the amount of $100.

2. Compensation works out to a rate of about $360 per minute.

3. The real movants were the liability insurance carriers.

4. The amount sought also included compensation for services in the antecedent criminal case.

After a brief hearing the court overruled the objection to its jurisdiction and notified the parties that he would set a time for a hearing on the merits and would hear witnesses as to what is a fair and equitable fee on a later date. The matter was set down for hearing on October 20, 1967, but was apparently continued for the convenience of Brunwasser and was heard on November 10, 1967. On October 19, 1967, Brunwasser filed a "notice" which amounts to an answer to the motion of Friedlander. Attached to the so-called "notice" was a nine-page "motion" again contesting the jurisdiction of the court and for the first time demanding trial by jury.

The trial on November 10th began before the district judge without any mention of the recently filed motion for jury trial and without any protest that the judge was undertaking to proceed without a jury.[5] After hearing the testimony of Friedlander, the district judge concluded that Friedlander had failed to establish a contract that he have $1,000 as a fee, and proceeded informally to determine facts and make conclusions of law on a quantum meruit basis. The court entered judgment that Friedlander have and recover from the $3,600 fund deposited in the court the sum of $800 as compensation for his services as attorney in producing the fund.

■ From this judgment Brunwasser has appealed assigning numerous errors. The merits need not detain us. Obviously Friedlander is entitled to reasonable compensation for his services and it is equally obvious that the district judge bent over backwards to be fair to Brunwasser. Indeed, we think that $800 out of the $3,600 recovery is a bare minimum fee. The size of the verdict is germane to the amount of the fee in two aspects: It is the best evidence of Friedlander's skill, and we think it remarkable that he was able to talk a Virginia jury into such a substantial award. Secondly, results obtained are always pertinent to the reasonableness of a lawyer's fee and especially so in a tort case with an element of contingency.

Turning to the law, which is what appellant Brunwasser craves, we think that only two of his contentions merit brief discussion.

■ Friedlander's motion that he be allowed a fee from the fund paid into the registry of the court was filed on July 17, 1967, and properly served on or about that date on Brunwasser. No response appears in the file of the court until October 19, 1967, more than 90 days thereafter. Rule 38 is explicit in its requirement that demand for trial by jury be in writing and served upon the other party "not later than 10 days after the service of the last pleading directed to such issue." The Federal Rules of Civil Procedure do not require that there be a written "pleading" in response to Friedlander's motion. United States v. Okawa, 26 F.R.D. 384 (D.Hawaii 1961), 1A Barron & Holtzoff, Federal Practice & Procedure § 244. Indeed, where such a document is filed, it is not regarded as a "pleading." Wholesale Supply Co. v. South Chester Tube Co., 20 F.R.D. 310, 315 (E.D.Pa.1957). Although we are inclined to think that Friedlander's motion was, on the facts of this case, "the last pleading directed to such issue" and that service of his motion started the running of the ten-day period for timely demand, we are reluctant to rest our decision upon such a rigid application of a period of limitation. Nor is it necessary that we do so. It is clear that there was notice given that the Friedlander motion would be heard on August 25 and on that day a partial hearing was conducted. At that hearing, Brunwasser made no claim or mention of the right to jury trial. Plainly, we think, he should have notified the court that he demanded jury trial prior to participating in a hearing conducted well over a month after the filing and service of the motion. Instead, he first in-

---

5. Late in the hearing, on page 26 of a 29 page transcript, and *after* the judge had announced his decision, Brunwasser renewed his motion for jury trial.

timated his wish for jury trial more than 90 days after service of the motion. On these facts we hold that his demand was not timely. Having decided that Brunwasser failed to make timely demand for jury trial, we need not decide whether the issue raised by the motion was one triable of right by jury. See Maddox v. Jinkens, 66 App.D.C. 362, 88 F.2d 744, cert. denied, 301 U.S. 699, 57 S.Ct. 929, 81 L.Ed. 1354 (1937); compare Simler v. Conner, 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963), and Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962).

█ Brunwasser urges that the trial judge terminated the hearing on November 10, 1967, without permitting defense or counterclaim. We do not so read the record. The alleged counterclaim related to some $336.50 said by Brunwasser to be due him for legal services rendered in Pittsburgh apparently for a client of Friedlander. All that is said about the alleged counterclaim in Brunwasser's pleading filed October 19, 1967, is that Brunwasser was entitled to a fee in the amount of $336.50 for processing a claim in bankruptcy in the United States District Court for the Western District of Pennsylvania for a company called "Eastern Aquatics, Inc." which matter was forwarded by Friedlander to Brunwasser, and that Brunwasser "looked to Mark P. Friedlander, Jr. for payment of his legal fee because he had no personal knowledge or previous association with Eastern Aquatics, Inc." Plainly such a pleading fails to state any legal obligation on the part of Friedlander to pay the fee. We do not hold, however, that the defective pleading is itself justification for refusing to allow Brunwasser to prove his counterclaim. For the record is plain that there was no motion to amend the pleading nor any offer of proof in support of the counterclaim. At no time during the hearing on November 10, 1967, did Brunwasser request the court to be permitted to take the witness stand to offer testimony on any subject either in opposition to the claim of Friedlander or in support of the alleged counterclaim.

The other assignments of error have been considered and are found to be entirely without merit.

Affirmed.