Leo **ROSEN** et al., Plaintiffs,

v.

**PUBLIC SERVICE ELECTRIC AND GAS COMPANY**, Defendant.

Morgan **SWEENEY** and Utility Co-Workers Association, Plaintiffs,

v.

**PUBLIC SERVICE ELECTRIC AND GAS COMPANY**, Defendant.

Civ. A. Nos. 245–66, 955–68.

United States District Court, D. New Jersey.

Aug. 25, 1970.

On Rehearing Nov. 24, 1970.

Supplemental Opinion May 24, 1971.

George Duggan, Newark, N. J., for plaintiffs.

Luke A. Kiernan, Jr., Newark, N. J., for defendant.

## OPINION

WORTENDYKE, District Judge:

Both of the captioned cases were instituted under the Civil Rights Act of 1964, 78 Stat. 241, § 703(a) (1), 42 U. S.C. § 2000e–2(a) (1). Both cases require a determination of whether or not a non-contributory pension fund, which treats males and females differently, violates the provisions of 42 U.S.C. § 2000e–2. In the first of these actions (C. 245–66) this Court, on March 19, 1968, entered an Order for summary judgment, from which the plaintiffs in that cause appealed to the United States Court of Appeals for the Third Circuit. The judgment appealed from was vacated and the cause remanded to this Court for further proceedings consistent with the Opinion of the Appellate Court. Its decision of April 1, 1969 is reported in 409 F.2d commencing at page 775. The Appellate Court directed that this Court

" * * * insofar as the original complaint is concerned, [determine] * *

whether any of the named appellants and any other male members of the union, may have retired between the date of the initial 1965 charges before the EEOC and the May 1, 1967 change, and thus may have been harmed by the alleged discrimination in the pension benefit formula;"

and stated that

"Such a finding * * * would require the court to rule on whether the original pension plan, prior to its modification, violated Title VII of the Civil Rights Act of 1964."

The same Opinion concludes that

" * * * if no male employee was harmed by the pre-May 1967 pension plan, that should dispose of the original complaint and injunctive relief is unnecessary."

Pending the decision of the Court of Appeals in Civil 245–66, Morgan Sweeney and Utility Co-Workers Association, as plaintiffs, instituted an action in this Court (Civil 955–68) against the same defendant in the case then on appeal. That action came to issue upon the answer of the defendant, filed October 29, 1968, and the Court of Appeals took notice of the pendency of that more recent action. At page 782 of its Opinion the Court of Appeals stated that

" * * * we have already noted that a second suit has been filed duplicating the charge that the modified [pension] plan violates Title VII. Because this second suit has not yet been disposed of, and because it deals with precisely the same substantive issues as the amendment to the original complaint, we deem it unnecessary to determine whether the grant of summary judgment as to that portion of the first complaint was in error.[1] It was suggested at oral argument that consolidation of the two actions, i. e., the original complaint as amended and the second complaint, would be sought if

---

1. [Footnote 23 in the Opinion of the Court of Appeals]. "We also deem it unnecessary therefore to determine whether, as appellants contend, the dis- crimination alleged in the modified pension plan was in fact a partial continuation of the discriminatory scheme of the original pension plan."

this court directed a remand. We believe that this would be the proper procedure to follow and that upon such consolidation the issues involved in the initial complaint, the amendment thereto, and the second complaint, can be sifted out and disposition made of them.[2], and [3].

Pursuant to the mutual undertakings of counsel at the joint conference on October 20, 1969, in both cases, a stipulation of facts and agreement of the parties was filed in the consolidated actions on June 17, 1970. By the terms thereof the parties "agree to submit the above matters on the foregoing Stipulation and the Briefs of the attorneys for the respective parties, without oral argument." In that Stipulation the following facts appear:

Defendant is a public utility corporation existing under the laws of the State of New Jersey, engaged in the manufacture, sale and distribution of gas and electric energy, with its principal place of business in the City of Newark, New Jersey.

Plaintiff Utility Co-Workers Association (Union) is an independent union having its office in the same City and duly certified by the National Labor Relations Board as the collective bargaining representative for certain employees in all of defendant's commercial offices on January 10, 1949.

On January 10, 1911 defendant instituted a welfare plan for all of its employees. That plan included a retirement or pension plan, non-contributory in character, i. e., involving no contribution thereto by employees. Attached to the Stipulation and marked joint exhibit No. 1, is a copy of the negotiated collective bargaining agreement between the parties, dated June 21, 1965, effective May 1, 1965, which includes the negotiated supplementary agreements respectively effective May 1, 1967 and May 1, 1969. There is also attached to this Stipulation, and bearing exhibit No. 2, a copy of the pension plan in effect prior to May 1, 1967 as well as a copy of the pension plan as modified or revised effective from May 1, 1967, marked joint exhibit No. 3.

Between July 1, 1965 and May 1, 1967 there were early retirements on pension by some male employees, members of the plaintiff Union, as well as during the period from May 1, 1967 to the date of the Stipulation.

At the time of the institution of C. 245–66 by Rosen, Sweeney and the Union on March 10, 1966, and since 1911, male employees were eligible for retirement at age 65, with 25 years service, and with mandatory retirement at age 70. Male employees were eligible for retirement at age 60 with 30 years service at a re-

2. [Footnote 24 in the Opinion of the Court of Appeals]. " * * * While the appellee has stated it would not raise any jurisdictional objections to the second suit * * * the district court has the right, of course, to raise the question of jurisdiction in the broad sense of that term, *sua sponte*. In view of the fact that appellants have filed a charge with the EEOC against the *modified* pension plan, and the EEOC *pursuant to appellants' request* has authorized the institution of a civil suit on this charge, * * * the necessary prerequisites for *court action appear to* have been met according to the authorities cited in note 11, *supra*."

3. [Footnote 25 in the Opinion of the Court of Appeals]. " * * * The applicability of Title VII to pension plans, particularly as related to the prohibition

against discrimination on account of sex, will no doubt have to be determined in the second suit pending between the parties even if the original complaint is found to be moot. Furthermore, if appellants prevail in the second suit, there may emerge a pattern of discrimination which could conceivably call for injunctive relief.

All we decide today is that on the record in this appeal the powerful remedy of injunction is not warranted to provide protection from the discriminatory practice alleged in the original complaint, which has already been eliminated. With respect to the second suit and the amendment to the first complaint, which should no doubt be consolidated for trial, we believe (without completely foreclosing the matter) that the issues are ripe for disposal on the merits."

duced pension. The female employees during the same period could retire, without reduction in pension, at age 60 with 20 years service and mandatory retirement at age 65.

At the time of the institution of C. 245–66 the plaintiff Union and the defendant were parties to a then current labor agreement which, by its terms expired on April 30, 1967. On January 24, 1967 plaintiff Union and defendant commenced collective bargaining negotiations for certain revisions of the existing Pension Plan. Those negotiations ripened into a new labor agreement which replaced the agreement which would expire on April 30, 1967. That new agreement was duly ratified by the membership of the Union and executed by the parties thereto on July 17, 1967, effective retroactively from May 1, 1967. That agreement included the following provisions:

"Section 3. Normal Retirement for Age

(1) Each employee may at his or her option retire at age sixty-five or thereafter, and must retire at age seventy.

(2) Each employee who retires under the provisions of this Section 3 shall be paid for life, in monthly installments, a pension computed at the annual rate of 1% of the average annual compensation of such employee for the five years of highest earnings within the last ten years of the employee's service, multiplied by the number of years, and any fraction of a year, of the employee's service.

Section 4. Early Retirement

(1) Each employee may at his or her option retire at age sixty or thereafter but before attainment of age sixty-five upon completion of twenty years of service.

(2) Each employee who retires under the provisions of this Section 4 shall be paid for life, in monthly installments, a pension computed at the annual rate of 1% of the average annual compensation of such employee for the five years of highest earnings within the last ten years of the employee's service, multiplied by the number of years, and any fraction of a year, of the employee's service, and reduced by one-quarter of 1% for each month that such employee is less than age sixty-five at the time of retirement, and by an additional one-quarter of 1% for each month that such employee is less than age sixty-two at the time of retirement, except that in the case of a female employee who retires under the provisions of this Section 4, no reduction in the amount of the pension shall be made on account of service prior to May 1, 1967."

The Union and the defendant commenced further collective bargaining negotiations for a new agreement on April 1, 1969. That agreement, which was duly ratified by the union membership, became effective for the period May 1, 1969 to April 30, 1971. By its terms the parties agreed "to permit a vesting of the pension benefits for any member whose service with the company is terminated for any reason and who has attained the age of 50 and completed at least 15 years of service."

Plaintiff Rosen retired from his employment with the defendant on September 9, 1966 at the age of 65 with full pension.

The parties stipulated that this Court has jurisdiction to hear and determine the issues involved in the above captioned cases upon the record herein consisting of the items contained in the stipulation, all pleadings filed in the captioned cases, the exhibits, if any, attached thereto, and the pretrial conference orders. Counsel for the respective parties agreed that they might refer to and use excerpts from the Congressional Record relating to the Civil Rights Act of 1964 and any matters related thereto.

Inland Steel Co. v. National Labor Relations Board, 170 F.2d 247 (7 Cir. 1948),

cert. granted 336 U.S. 960, 69 S.Ct. 887, 93 L.Ed. 1112 (1949), affirmed American-Douds, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925, held that "a retirement and pension plan is included in 'conditions of employment' and is a matter for collective bargaining" and that the employees' retirement and pension plan was part of the subject matter of compulsory collective bargaining within the meaning of the National Labor Relations Act. The Court, at page 250 of the Opinion in *Inland Steel,* stated that section 8(a) (5) required an employer to bargain collectively with the representative of his employees, subject to the provisions of Sec. 9(a) which provides that the duly selected representative of the employees in an appropriate unit shall be their exclusive representative for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment. See also Retail Clerks Union, No. 1550 v. N. L. R. B. (1964), 117 U.S.App.D.C. 191, 330 F.2d 210, 215, cert. den. 379 U.S. 828, 85 S.Ct. 41, 13 L.Ed.2d 31 (1964).

On January 24, 1967 plaintiff Union and the defendant commenced collective bargaining negotiations for certain revisions of the existing pension plan after a charge had been filed with the EEOC alleging that Public Service was committing an unlawful employment practice, within the meaning of Title VII of the Civil Rights Act of 1964, by maintaining a pension plan that discriminated on the basis of sex, because it permitted retirement at different ages and length of service for men and women. Upon these charges, and following an investigation, the Commission issued a decision, dated January 26, 1966, finding reasonable cause to believe that the pension plan did violate Title VII. By letter dated February 9, 1966, the Director of Compliance of the Commission informed employee Rosen that such reasonable cause had been found and that the Commission would attempt to eliminate the practice by conciliation. By a subsequent letter dated February 9, 1966, the Director advised Rosen that conciliation would be undertaken and continued by the Commission. Thereafter on March 10, 1966 the earlier action (C. 245–66) was commenced in this Court.

As will appear from the Stipulation in the present actions, there existed a collective bargaining agreement between the Union and defendant which, by its terms, expired on April 30, 1967. In anticipation of such expiration, as will also appear from the stipulation herein, the Union and the defendant on January 24, 1967 commenced collective bargaining negotiations for a new agreement, to succeed that which would expire on April 30, 1967, and in those negotiations the Pension Plan was revised in a resulting new agreement between the Union and the employer which became effective, retroactively, to May 1, 1967 and terminated April 30, 1969. The terms and provisions of the collective bargaining agreement which took effect May 1, 1967, have already been hereinabove at length set forth. The provisions thereof relating to retirement and pensions were duly ratified by the members of the Union and constituted the final fruits of the negotiations between the employer and the representatives of the Union acting in behalf of the employees. Stipulation, par. 6; Joint Exhibit No. 1.

The defendant argues that because the proceedings before the EEOC were completely *ex parte* and non-adversary, the statements and conclusions of the Commission are not binding upon this Court. Defendant contends that this Court is now confronted with "the threshold question of whether Title VII was ever intended to reach pension or retirement plans." In support of its contention that Title VII of the Civil Rights Act of 1964 does not apply to retirement or pension plans defendant relies heavily upon Gruenwald v. Gardner, 390 F.2d 591 (2 Cir. 1968), cert. den. 393 U.S. 982, 89 S.Ct. 456, 21 L.Ed.2d 445 (1968). Although the opinion in that case stated that "the trend of authority makes it clear that the variation in amounts of retirement benefits based upon differ-

ences in the attributes of men and women is *constitutionally* [emphasis supplied] valid. \* \* \* The appellant does not press his argument that the section in question is violative of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1964), 78 Stat. 253 (1964), but we find that that contention is also without merit." The complaint in *Gruenwald* alleged that certain provisions of the Social Security Act were unconstitutional in that women were accorded more favorable treatment than men in computing social security payments. The Court held that such provision did not constitute "invidious discrimination nor violate either the due process or equal protection clause." In *Gruenwald*, the statute in question dealt with assistance to the aged under the Social Security Act and not private pension plans. The Second Circuit found that the benefit differentials were not an invidious discrimination since they sought to *reduce* the disparity between the economic and physical capabilities of men and women. No such disparity has been shown to exist in this industry. Congress, in the Old Age Assistance program, was creating a broad national policy based on overall national problems and considerations. In the case at bar, the discrimination emanates from one pension plan in one company in one industry in a given, limited geographical area. Congress, of course, has a wider latitude in creating exceptions to its own laws. A private company cannot invoke the prerogatives of the Congress—especially when it fails to present any justification for its action.

The Court of Appeals in *Rosen* (409 F.2d 775) agreed with appellant that:

"[T]he original complaint was not mooted by the May 1, 1967 revision in the pension plan because of the possibility that some employees may have suffered money damages before the change was made."

Accordingly, the case was remanded:

"for a determination as to whether any of the named appellants, and any other male members of the union may have retired between the date of the initial 1965 charges before the EEOC and the May 1, 1967 change, and thus may have been harmed by the alleged discrimination in the pension benefit formula. Such a finding, of course, would require the court to rule on whether the original pension plan, prior to its modification, violated Title VII of the Civil Rights Act of 1964.

If the district court does not find any party entitled to the kind of relief above described for harm caused by alleged discrimination prior to the May 1, 1967 pension plan revision, then we agree with the appellee that the issues raised in the *original* complaint are moot."

What complicates the questions now confronting this Court are the alleged oral amendment of the original complaint and the consolidation of that complaint with the new case of *Sweeney* (C. 955–68). In *Sweeney*, the plaintiffs contend that the attempted elimination of the discrimination alleged to exist under the original plan was offset by so much of the revised plan as was embodied in the exception contained in Section 4(2) which states that "in the case of a female employee who retires under the provisions of this Section 4, no reduction in the amount of the pension shall be made on account of service prior to May 1, 1967."

█ I find that the plan as it existed prior to the revision of May 1, 1967 violated Title VII of the Civil Rights Act of 1964 by discriminating against male employees in favor of female employees on no other apparent basis than that of sex. However, I also find that the revision of the plan, effective May 1, 1967, eliminated the discrimination against male employees which existed under the previous plan, but favored female employees to the extent that it eliminated provisions for the reduction in the amount of their pensions on account of service prior to May 1, 1967. I find that the foregoing exception in favor of female employees constituted a discriminatory violation of Title VII. The effect of this exception may be illustrated by the following chart:

<u>1965</u> *Original Pension Plan*

<u>MALE</u> 60 years of age

$10,000 average annual salary

30 years employment

$10,000 x 1% x 30 years = $3,000 full pension if retirement was at 65

$3,000 x 24% (penalty) = $720

3,000.00 full pension reduced by

720.00 penalty for early retirement

$2,280.00

Pension = $2,280.00

<u>FEMALE</u> 60 years of age

$10,000 average annual salary

30 years employment

$10,000 x 1% x 30 years = $3,000 full pension

NO REDUCTION FOR EARLY RETIREMENT

Pension = $3,000.00

<u>1968</u> (After May 1, 1967) *Amended Pension Plan*

<u>MALE</u> 60 years of age

$10,000 average annual salary

30 years employment

$10,000 x 1% x 30 years = $3,000 full pension if retirement was at 65.

$3,000 x 21% (new penalty) = $630

$3,000.00 full pension reduced by

630.00 penalty for early retirement

$2,370.00

Pension = $2,370.00

<u>FEMALE</u> 60 years of age

$10,000 average annual salary

30 years employment

$10,000 x 1% x 30 years = $3,000 full pension

As of May 1, 1967

$10,000 x 1% x 29 years = $2,900.00 pension as of May 1, 1967

$10,000 x 1% x 1 year (period between May 1, 1967 and retirement date in 1968) = $100.00

$100.00 x 21% (penalty applied to sums earned after May 1, 1967) = $21.00

$100.00 – $21.00 = $79.00 pension + $2900.00 (pension May 1, 1967)

Total Pension as of 1968 = $2,979.00

PENSION PAYMENTS PER ANNUM

| *Male* | <u>1965</u> | <u>1968</u> |
|---|---|---|
| 60 | $2,280.00 | $2,370.00 |
| *Female* | | |
| 60 | $3,000.00 | $2,979.00 |

■ Title VII of the Civil Rights Act of 1964 makes it unlawful to discriminate between employees with respect to " * * * compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a) (1). Differentiation between male and female on the basis of sex is not *per se* illegal in cases in which sex is an occupational qualification reasonably necessary to the normal operation of that particular business. Bowe v. Colgate-Palmolive Company, 272 F.Supp. 332, 360 (S.D.Ind.1967), reversed in part at 416 F.2d 711 (7 Cir., 1969). The burden of proving such occupational qualification is on the employer. Weeks v. Southern Bell Telephone & Telegraph Co., 408 F.2d 228 (5 Cir. 1969). Likewise in determining and implementing the terms, conditions or privileges of employment, any differentiation between employees of different sexes must rest upon something more than the fact that one employee is a male and the other is a female. An employer, to justifiy discrimination in this area, must demonstrate to the Court that there is [in fact] a reasonable basis that the differentiation between male and female in the company pension plan is based on something more than just sexual differences. *id.* at 235. Defendant has advanced no such difference. Why should women be allowed to retire earlier than men—at full pension? Are these differentiations based on merit? quality or quantity of service? aptitude? need? These questions remain unanswered.

■ The Equal Employment Opportunity Commission found defendant's original pension plan to be in conflict with the provisions of Title VII. Guidelines in this area, issued by the Commission, in 1968, after the filing of these actions, clearly barred differences in optional or compulsory retirement ages based on sex. Federal Register, Vol. 33, No. 38 at p.

3344. A ruling to the same effect had earlier been made by the Commission in this case. Such guidelines are entitled to considerable weight in construing a statute. Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Weeks v. Southern Bell Telephone & Telegraph Co., *supra*, 408 F.2d at 235; International Chemical Workers Union v. Planters Manufacturing Company, 259 F.Supp. 365 (N.D.Miss.1966). After reviewing Title VII, its legislative history and the cases decided subsequent to its enactment, this Court concurs with the judgment of the Equal Employment Opportunities Commission that differences in retirement plans, be the plan optional or compulsory, are violative of Title VII of the Civil Rights Act of 1964.

The Civil Rights Act of 1964 is set forth on pages 287 through 319 of the United States Code Congressional and Administrative News, 88th Congress. The Legislative History of the Act as a whole is found on pages 2355 through 2519 of the same compilation, but makes no reference to the inclusion of "sex" as a criterion of the proscribed discrimination. The word is well understood and therefore requires no construction for an interpretation of the sentence of which it forms a part. It must be taken at its commonly accepted meaning. Georgia Power Co. v. Equal Employment Opportunity Commission, 412 F.2d 462 (5 Cir. 1969). In Phillips v. Martin Marietta Corporation, 411 F.2d 1 (5 Cir. 1969) cert. granted 397 U.S. 960, 90 S.Ct. 994, 25 L.Ed.2d 252 (1970) a summary judgment for the employer was affirmed in a holding that "the words of the statute are the best source from which to derive the proper construction" where the court found that "a perusal of the record in Congress will reveal that the word 'sex' was added to the bill only at the last moment and no helpful discussion is present from which to glean the intent of Congress." [4]

---

4. The word "sex" was not part of the Civil Rights Bill when it left the House Rules Committee on January 30, 1964. The actual amendment was offered by

Congressman Smith (D.Va.), a critic of the Bill, and commentators generally agree that the addition was designed to sabotage the Bill. See: Sex Discrim-

Under the language of 42 U.S.C. § 2000e–2(a) (1) defendant's pension plan, established in 1911, discriminated against its male employees on the basis of sex by permitting retirement at different ages and length of service for men and women. The May 1, 1967 revision of the collective bargaining agreement between defendant and the representatives of its employees does not completely avoid violation of the Civil Rights Act because that revision included the following phrase in Section 4(2) thereof:

"except that in the case of a female employee who retires under the provisions of this Section 4, no reduction in the amount of the pension shall be made on account of service prior to May 1, 1967."

That exception perpetuates the discriminatory features of the earlier plan by continuing to grant higher pension benefits to women, hired prior to May 1, 1967, than are granted to men hired at the same time. The criticized exception must be rescinded as violative of the Civil Rights Act.

Certainly Congress envisioned that difference would exist, such as in the area of benefits to widows or widowers of employees, but such differences, it seems, must be based on factors other than sex. Indeed, in 1963, one year before the passage of the Civil Rights Act of 1964, Congress declared it illegal to discriminate between similarly-situated employees, on the basis of sex, with regard to wages unless such differential was based upon a factor other than sex. 29 U.S.C. § 206(d). The Civil Rights Act of 1964 was apparently designed to supplement this earlier legislation. See: Congressional Record, Debate of June 12, 1964. Defendant urges that Congress, in enacting Title VII, never intended to have that section used to reduce benefits already accorded to women. In support of this argument, defendant produces a letter from former Senator Humphrey, the floor manager of the bill in the Senate, to a Mr. Nicholls of the Northwestern Bell Telephone Company. The letter states that Title VII was, in part, designed to improve the employment status of women and that " * * it would be a gross distortion of the provisions of Title VII to apply this language in a manner which impaired existing pension, retirement, or benefit programs." Plaintiffs respond that equalization need not impair women's retirement benefits and argue that the collective bargaining agreements bar such impairment. The debates in Congress neither support nor refute Senator Humphrey's letter. Congress certainly sought to better the employment status of women. Whether or not Congress sought to give women special privileges is unclear. It seems unlikely that Congress would enact a statute banning discrimination based on sex and in doing

ination in Employment: An Attempt to Interpret Title VII of the Civil Rights Act of 1964. 1968 Duke L.J. 671 at 676; Vaas, Francis J., Title VII: Legislative History, 7 Boston College Ind. and Commerce L.Rev. 431; Comment, 50 Iowa L.R. 778 at 789 et seq. (1965). Hearings were never held on the amendment and the failure to do so was noted with alarm by the Chairman of the House Judiciary Committee, Mr. Celler (D.N.Y.), 110 Cong.Record 2485 (February 8, 1964). Indeed, in the House the amendment was opposed by the Administration and many supporters of the whole bill. 1968 Duke L.J. *supra*, at 677–78; 7 B.C.Ind. & Comm.L.Rev. *supra*, at 441–42. Five Congresswomen, however, did support the amendment and one of them, Congresswoman Kelly of New York stated that " * * * we seek equal opportunity in employment for *women*. No more—no less." 1968 Duke L.J. *supra*, (quoting from the Congressional Record), at 677. The word "sex" was adopted by a vote of 168 to 133 and attempts to qualify the clear word "sex" by amendments were rebuffed. *id.* at 678. In the Senate, the bill, as amended, received both more favorable treatment and Administration support through Senators Humphrey, Mansfield, Kuchel and Dirksen, 7 B.C.Ind. & Comm. Law Rev. *supra*, at 445. Nevertheless, hearings were never held and debate concentrated largely on the racial provisions of the bill. The Senate did broaden the provisions in what is now § 2000e–2 to cover all agencies as well as private employers. *id.* at 445.

so mean to grant special privileges to one sex at the expense of the other. Title VII rejects the notion of "romantic paternalism" towards women and seeks to place them on *equal* footing with men. Weeks v. Southern Bell Telephone & Telegraph Company, *supra*, 408 F.2d at 236. The Pension Plan, as it existed prior to May 1, 1967, and those parts of the amended Plan, as noted above, therefore, are in conflict with the language and spirit of 42 U.S.C. § 2000e–2(a).

 The plans in question were part of the negotiated collective bargaining agreements between defendant and the representatives of its employees. The degree of mutuality of acceptance is contested. Whether the plans were contractually agreed upon or not is irrelevant since private parties cannot agree to perform illegal acts. United Mine Workers of America v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); United Brotherhood of Carpenters and Joiners of America v. United States, 330 U.S. 395, 67 S.Ct. 775, 91 L. Ed. 973 (1947); Local 53 of International Association of Heat and Frost Insulators and Asbestos Workers v. Vogler, 407 F.2d 1047 (5 Cir. 1969) (Congress, under the Commerce Clause, may invalidate private agreements violative of the Civil Rights Act).

 The defendant argues that even if the original pension plan is void, the 1967 amended plan cures any illegality and that the exception therein merely recognizes rights accrued prior to the revision of the pension plan. The exception in the 1967 amended plan envisions a phasing out of the discriminatory pension system. Gradual improvement of employment opportunities does not in and of itself constitute compliance with Title VII. United States by Clark v. H. K. Porter Company, 296 F.Supp. 40, 59 (N.D.Ala.1968). Title 42 U.S.C. § 2000e–5(g) requires that if the court finds an intentional unlawful employment practice, it may enjoin the respondent from participating in such practice and order such affirmative action as seems appropriate. A Court is not limited to barring only present and future wrongs but may act to eliminate the present effects of past discriminations. Local 53 of Int. Assn. of Heat & Frost I & A Workers v. Vogler, *supra*, 407 F.2d at 1052–1053; Dobbins v. Local 212, International Brotherhood of Electrical Workers, A.F.L.–C.I.O., 292 F.Supp. 413 (D.C.Ohio 1968). In shaping a decree in this area, a District Court has wide discretion. *id.* at 452.

According to the terms of the pension plan, retirement benefits were and are non-contributory, i. e. the entire expense of the Welfare Plan is borne by the Company. *Joint Exhibit No. 3.* The pension plan is administered by the Company, which can discontinue the plan at any time though it must provide for employees and beneficiaries of former employees. *id.* at 10 and 11. The pension plan can be amended by the company but there is a conflict between Section 15 of *Joint Exhibit No. 3* and Article XVII, Section 1(a) of *Joint Exhibit No. 1* as to whether or not benefits can be reduced in order to conform with governmental requirements. This question and the question of whether or not the pension is compensation, although excluded as such under the pension plan (*Joint Exhibit No. 3*, Section 1(7)) are not before this Court.

The New Jersey Supreme Court has held that a pension plan is not a "mere ephemeron and the promise to pay a pension upon performance of the fixed terms a mere illusion." Stopford v. Boonton Molding Company, 56 N.J. 169, 265 A.2d 657 at 665 (1970). If an employee, in this State, performs all of the conditions precedent to a pension plan he acquires a vested right to an agreed upon lifetime pension. *id.* at 655. Termination cannot operate retroactively so as to cut off previously accrued funding obligations. *id.* at 665. Whether or not the benefits under this plan vested prior to 1967 is irrelevant to the determination of the legality of such plan pursuant to the Civil Rights Act of 1964. This Court will not and cannot renegotiate a labor agreement for these parties—its func-

tion is limited to determining whether or not the present pension plan complies with the provisions of the federal civil rights statute. Having found that these pension plans discriminate against male employees solely because of their sex, and that such discrimination is not based on a rational business need or circumstance in this particular business, this Court must find that the provision violates the intent and language of Title VII of the Civil Rights Act of 1964.

Both parties have stipulated that damages would be assessable if this Court found the pension plan provisions in question to be illegal. Actual calculation of damage, it was agreed, would be undertaken by the parties and then submitted to this Court for review.

It is therefore on this 25th day of August, 1970,

Ordered that, in light of the findings above, both parties submit to this Court a schedule of all male employees who retired after July 1, 1965, under the age of sixty-five, including therein the amounts deducted from their incomes as penalty for early retirement.

It is further ordered that defendant Public Service Electric and Gas Company will immediately cease and desist from discriminating between male and female employees as to pension and retirement benefits.

### ON MOTION FOR REHEARING AND RECONSIDERATION

### OPINION and ORDER

Defendant, Public Service Electric and Gas Company moved, on October 13, 1970, for an Order granting a rehearing and reconsideration respecting this Court's Opinion in favor of plaintiffs herein, filed on August 25, 1970, 328 F. Supp. 454. On the argument of the motion, respective counsel were permitted to argue the merits of the aforementioned Opinion. In part, therefore, defendant's motion has been granted since the argument on the motion partially took the form of a rehearing and this subsequent opinion constitutes a reconsideration of the issues involved.

Defendant reiterated its prior contention that the 1967 revised pension plan presently in operation is not violative of Title VII of the Civil Rights Act of 1964. Under the present plan all employees, male or female, who opt for early retirement at age 60 suffer a 21% penalty reduction from their full pension; except however, the plan preserves for females added benefits for years worked prior to May 1, 1967,[1] which benefits have been described as antecedent or accrued rights.

Plaintiffs have maintained throughout this litigation that the preservation of these allegedly antecedent rights results principally in a perpetuation of the discriminatory practice under the former pension plan. This Court, in accord with that contention, stated in its Opinion of August 25, 1970, at p. 463:

> "That exception perpetuates the discriminatory features of the earlier plan by continuing to grant higher pension benefits to women, hired prior to May 1, 1967, than are granted to men hired at the same time."

Because the present plan continues to implement the effects of the prior discriminatory practice, the result is a present and future discrimination which is violative of Title VII of the Act, United States v. Sheet Metal Workers Int. Ass'n. Local U. 36, 416 F.2d 123 (8th Cir., 1969); Griggs v. Duke Power Co., 420 F.2d 1225 (4th Cir., 1970). The relief prayed for by the plaintiffs should, therefore, be granted.

Accordingly, this Court's Opinion, filed on August 25, 1970, is reaffirmed in all respects.

Therefore, it is on this 24th day of November, 1970,

Ordered that the defendant's motion is denied and the Opinion of this Court filed on August 25, 1970 remains as the Opinion of this Court respecting all issues herein.

---

1. See Chart contained in this Court's Opinion, filed August 25, 1970, at p. 461.

**466**

## SUPPLEMENTAL OPINION

The nature of these actions is disclosed in my Opinion filed August 25, 1970, 328 F.Supp. 454, which found that the pension plan of the defendant Public Service in its collective bargaining agreement effective May 1, 1967, was violative of the provisions of the Civil Rights Act of 1964, 78 Stat. 241, § 703(a) (1), 42 U.S.C. § 2000e–2(a) (1) (hereinafter the Act). In that Opinion and the Order implementing the same this Court determined that defendant's noncontributory pension plan treated male and female employees differently and thereby violated the provisions of the Act. The Opinion further stated that "both parties have stipulated that damages would be assessable [in favor of the plaintiffs and against the defendant] if this Court found the pension plan provisions in question to be illegal. Actual calculation of damages, it was agreed, would be undertaken by the parties and then submitted to this Court for review." Accordingly, the parties were directed to submit to this Court a schedule of the names and positions in employment of all male employees who retired after July 1, 1965 under the age of sixty-five, including therein the respective amounts deducted from their incomes as penalty for early retirement.

On August 11, 1970 the parties filed in this Court a written stipulation supplementing that previously filed on June 17, 1970. The supplemental stipulation provided that "if the Court resolves the meritorious issues favorable to plaintiffs, the Court, at a subsequent date, will determine whether any affirmative relief, i. e., damages, are recoverable in a case of this kind. Conversely if the Court resolves the said issues in favor of the defendant, a judgment for defendant will be entered thereon."

On February 19, 1970, upon due notice, the parties orally argued before the Court cross-motions respecting the issues of damages and the allowance of a counsel fee which had been expressly reserved in the Court's Order of August 25, 1970.

In reserving decision upon the issues presented by the argument the Court informed the defendant that it might later be required to furnish the names of the retirees during the period in question.

■ Defendant argues that the authority of this Court to award damages by way of affirmative relief is found in 42 U.S.C. § 2000e–5, and rests in the sound judicial discretion of the Court to be exercised where it is demonstrated by competent evidence that the person or persons complaining of the alleged discrimination have sustained pecuniary loss as a direct result of the discrimination found. Where, however, it can not be shown with reasonable certainty that any damage resulted from the discrimination complained of there can be no recovery of damages. Plaintiffs have not discharged their burden of proving damages in this case. The burden of proof upon this issue required that evidence be presented to demonstrate that in the absence of the discriminatory provision of the negotiated pension plan, male employees would have been entitled to retire without a reduction in pension benefits prior to the age of 65. The facts as stipulated by the parties disclose that the revised pension plan of May 1, 1967 fixed retirement ages for all employees at 65 years minimum, 70 years maximum, but with reduced pecuniary benefits, for service subsequent to May 1, 1967, for males opting for early retirement. The negotiated collective bargaining agreement which became effective May 1, 1969 left unchanged the revised plan of 1967 except for the change which permitted the "vesting" of pension benefits for all employees with fifteen years of service at age 50.

The uncontroverted evidence in this case is that the Union, acting in behalf of its entire membership, through collective bargaining negotiations followed by membership approval, adopted three successive labor agreements with the defendant from 1965 to 1969, and accepted the benefits prescribed thereunder. No evidence to the contrary having been produced this Court assumes that all

male employees opting for early retirement during the period in question did so voluntarily. These certain male employees did, therefore, choose early retirement with the knowledge that they were doing so at reduced pecuniary benefits. The attainment of full pension rights could have been achieved by these individuals by continuing their employ with the defendant to age 65. Plaintiffs fail to refute this claim. The plaintiffs have failed to discharge their burden of proof in this matter since they have not shown that the discriminatory practice precluded any one of the members of the class from ensuring his maximum retirement benefits.

■ That portion of the Civil Rights Act dealing with affirmative relief, 42 U.S.C. § 2000e–5(g),[1] invests the Court with wide discretion. The purposes of any relief deemed appropriate are to ensure compliance with the Act so as to terminate the practice and eliminate the present effects of past discrimination and make its victims whole. Hutchings v. United States Industries, Inc., 428 F. 2d 303 (5th Cir. 1970); Bowe v. Colgate-Palmolive Company, 416 F.2d 711 (7th Cir. 1969); Local 53 of Int. Ass'n of Heat & Frost I. & A. Wkrs. v. Vogler, 407 F.2d 1047 (5th Cir. 1969). I am convinced that damages are not necessary to ensure compliance with my previous Opinion and Order. Moreover, increasing the pension benefits of these certain male employees who retired early would not serve to eliminate the present effects of past discrimination; rather it would increase the number of individuals who will be receiving full pension benefits for early retirement when hereafter no employee, be he male or female, will receive full pension benefits upon early retirement. It is beyond question that this pension plan discriminated against *all* male employees who attained the age of 60 during the period in question, not just those who elected early retirement. Those who retired early did so knowing full well the pecuniary benefits they would receive. This group claims to have been damaged since they received less benefits than females retiring early due solely to the discriminatory plan. But all those males who reached age 60 during the period and did not retire early were also discriminated against; for all these males were forced to continue working to age 65 if they sought to ensure maximum retirement benefits. Surely, they were as affected by the provisions of the plan as those who retired early at reduced pecuniary benefits; indeed it can be said that those who continued in employment until age 65 were caused to continue working up to 5 years longer than the early retirees. Yet, how are these individuals to be recompensed? The damages, if any, are not ascertainable for this class of employees.

■ All of the above mentioned factors have appealed to the Court's discretion. There is, however, a further item for consideration. The defendant's records disclose that during the period in question, being November 15, 1965 to the present, the following number of employees retired early: 6 females, 48 males. The great disparity in the number of male and female employees retiring early, together with the factors hereinabove considered, persuade this Court that this case is not one that calls for any affirmative relief by way of compensatory damages. This Court firmly believes that to grant damages to those male employees who retired early during the period would do nothing more than allow a windfall and a reward for having chosen early retirement to the detriment of those who worked considerably longer to obtain full pension

1. "(g) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, *and order such affirmative action as may be appropriate,* * * *."

rights and who cannot be recompensed for the discrimination that affected them as well.

The questions on this damage issue have caused me much concern. I do not, however, feel that the discriminatory practice complained of herein is the usual type of Title VII complaint. There is no charge of loss of wages, promotions, etc. There have been no precedents to follow in respect to a charge of discrimination in a pension plan. The obscurity of the circumstances under which the term "sex" was included among the statutorily proscribed criteria for employment, and the absence of a clear-cut legislative history as far as this criterion is concerned, further contra-indicates an award of damages. Ultimately the decision herein denying damages rests upon the invocation of this Court's discretion after considering the totality of the circumstances.

Plaintiffs also seek a reasonable attorney's fee as part of the costs of this action under the provisions of Title VII, Section 706(k) of the Act, 42 U.S.C. § 2000e–5(k), which permits a court in any proceeding under the Civil Rights Act, in its discretion, to allow the prevailing parties a reasonable attorney's fee as part of the costs. See, Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) and Miller v. Amusement Enterprises, Inc., 426 F.2d 534 (5th Cir. 1970). Counsel argues that the principal reason for awarding counsel fees as costs is that "plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits others in the same manner as himself"; citing Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). It is also argued that "reasonable attorneys' fees" should reflect not only an hourly compensation but also that the attorney's achievement in successfully prosecuting a new and difficult case has conferred benefits upon a class of individuals exceeding those by whom he is retained. Freeman v. Ryan, 133 U.S.App.D.C. 1, 408 F.2d 1204 (1968); Brunwasser v. Suave, 400 F.2d

600 (4th Cir. 1968); Featherstone v. Barash, 382 F.2d 641 (10th Cir. 1967).

 In light of the circumstances and nature of the litigation and the number of hours spent thereon, I award $7,-500.00 to plaintiffs' attorney as a reasonable attorney's fee.

Let an appropriate Order in conformity with the foregoing Opinion be submitted.