Jerry Dell GIMARC, Plaintiff,

v.

Carl NEAL, d/b/a United Auto Sales,
et al., Defendants.

Civ. A. No. 75–1582.

United States District Court,
D. South Carolina,
Columbia Division.

June 17, 1976.

Francis T. Draine, Lourie, Draine & Curlee, Columbia, S. C., for plaintiff.

J. Reese Daniel, Columbia, S. C., for Burnside Dodge, Inc.

Richard E. Bonnette, Jr., Cooper, Register & Bonnette, Lexington, S. C., for Capital City Auto Auction of Lexington, Inc.

Frank B. Register, Jr., Cooper, Register & Bonnette, Lexington, S. C., for Carl Neal, d/b/a United Auto Sales.

## ORDER OF JUDGMENT

HEMPHILL, District Judge.

This is an action brought to recover damages for alleged violation of subchapter 4 of the Motor Vehicle Information and Cost

Savings Act (Public Law 92–513).[1] Plaintiff claimed (and proved) that the automobile she purchased from the defendant Carl Neal had an odometer upon which the mileage registered approximately 44,000 miles but that the actual mileage was in excess of 74,000 miles. Plaintiff had initially sued the various owners, but at the end of the testimony,[2] the court granted the motion of the plaintiff for judgment against Carl Neal, from whom plaintiff bought the automobile, and dismissed the other defendants upon motion of plaintiff. Defendant Neal offered objection to dismissing the other defendants, but Neal had filed neither a counterclaim against plaintiff, nor a cross-claim against any other defendant and had no cause to promote or defend except his own defense to plaintiff's action.

Thereafter the issue of damages was submitted to a jury that found for plaintiff damages in the sum of $450.00. This court did not charge the provisions contained in subsections (a)(1) and (a)(2) of 15 U.S.C. § 1989 [3] because the court was of the opinion that it would be improper to charge the statute and have the jury engaged in any calculations other than an accurate assessment of actual damages, which the court could later adjust pursuant to the statute if necessary. At no time was the court requested to charge the particular statute, and at the end of the court's instructions to the jury, counsel were asked if they wished anything else charged, or had any exception; no exception was taken, and no additional charge requested.

1. The complaint so stated. The applicable statute, so far as this litigation is concerned, is 15 U.S.C. § 1981 to and including 15 U.S.C. § 1989.

2. Plaintiff called most of the defendants as witnesses under the provision of Rule 611(c), Federal Rules of Evidence.

3. 15 U.S.C. § 1989 provides: *Civil actions to enforce liability for violations of odometer requirements; amount of damages; jurisdiction period of limitation.*

(a) Any person who, with intent to defraud, violates any requirement imposed under this subchapter shall be liable in an amount equal to the sum of— ·

■ The jury having brought in a verdict for the plaintiff in the sum of $450.00 the court has the responsibility to return to 15 U.S.C. § 1989 and make the adjustments that the section envisions. They are three-fold. Initially, the court must determine what amount of judgment shall be entered in behalf of the plaintiff. A mathematical calculation reveals that if the verdict of $450.00 were enlarged three times (treble damages), the total would amount to $1350.00 actual damages. The statute provides, however, that the person who defrauds shall be liable in an amount equal to the sum of three times the amount of actual damages sustained or $1500.00 *whichever is greater* (emphasis added), $1500.00 is the greater amount. Accordingly, this court makes an initial adjustment, in keeping with the verdict of the jury and the statute applicable thereto, and directs that the Clerk shall enter judgment for the plaintiff in the sum of $1500.00 actual damages.

■ The second responsibility of the court rests in the assessment of the costs of the action. This court finds that the costs to be assessed amount to the following:

### COSTS

| | |
|---|---|
| Service of Process | $ 17.40 |
| Filing Fee | 15.00 |
| S. J. Barczak – Reporter (Deps. of Maples and Neal) | 97.20 |
| Holly Hill Reporting Service (Deps. of Eugene Jones) | 56.55 |
| Investigator Mileage | 8.68 |
| TOTAL | 194.83 |

(1) three times the amount of actual damages sustained or $1,500, whichever is the greater; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court.

(b) Any action to enforce any liability created under subsection (a) of this section, may be brought in a United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within two years from the date on which the liability arises.

Accordingly the Clerk will enter judgment for costs in the amount of $194.83.

The third responsibility of the court rests in the assessment of "reasonable attorneys' fees as determined by the court." This question poses the most difficult task. If one is to judge the attorneys' fees purely by the amount of recovery, then the purposes of the statute would be avoided.[4] Unfortunately, the consideration which the Congress gave this legislation is not such as to be advisory to the courts to whom it is given the task passing upon the impact of the statute on the public. It is conceivable, of course, that a jury could award $1.00 in damages, or the jury could award nothing. Is it then the responsibility of the court to assess actual damages of $1500.00? This court, now faced with the actual question, is of the present opinion that the court would have to order the Clerk to enter judgment for $1500.00. And, if the jury awarded no damages and the verdict of $1500.00 was entered, what standard should be used in assessing attorneys' fees?

If the attorney is to be awarded a fee commensurate with the assistance he gave the plaintiff, his fee could easily overshadow the amount which is recovered for the plaintiff.[5] If one is to take the matter of recovery as a measure, then first-class attorneys will be discouraged from engaging in this sort of litigation, and the purpose and intent of the Congress would be entirely aborted. Perhaps it would be easy for this court to "pass the buck" back to the Congress of the United States. Justice, however, demands, that the court give a decision and that the attorney be awarded a reasonable attorney's fee. If this court sets a precedent awarding attorneys' fees in such a niggardly fashion as to discourage from handling this type of litigation the kind of lawyers we want in federal[6] court, then we will have aborted the purpose of the Congress in passing the legislation.[7]

In an effort to solve this problem, which takes on immense proportions when one considers the number of cases that could

---

4. See United States Code Annotated § 1981, where there is reference to the "purpose" of the entire legislation known as the Motor Vehicle Information and Cost Savings Act, citing U.S. Congressional and Administrative News, 1972 edition, commencing at page 3960. This court examined such explanation with more than usual interest, but the information there displayed is of limited assistance. Page 3963, the Senate Report recites that there are four basic needs for the legislation, number 4 which is "the need to prevent odometer tampering." On the following page one finds "Finally, there is a need to adopt a national policy against odometer tampering. Some 17 states presently have legislation prohibiting persons from tampering with odometers. The national policy against such fraudulent practices is needed."

5. Plaintiff's attorney presented to the court a conservative estimate of the time spent in preparation and trial, of 29½ hours. This included calculations for the initial client interview, research and preparation of the complaint, study of the answer of Burnside Dodge, Inc., study of the answer of Capitol City Auto Auction, legal research and preparation of a brief in reply to a motion of defendant Neal, a study of the an-

swer of defendant Neal, preparation of notices of three depositions, preparation and taking of three depositions, study of transcripts of three depositions, preparation of the affidavit of Brewer in connection with the motions of Neal, attendance at a roster meeting, selection of jury, preparation of a pretrial order, and attendance at the trial. (His post-trial appearance was not included.)

6. Federal District Courts, and the judges thereof, proving the adage that "hope springs eternal in the human breast" share the ambit in that federal courts attract the best in advocates and advocacy.

7. It is not for this court to question why the Congress saddled this court with jurisdiction of small cases such as this. Suffice it to say the court has the obligation to schedule and try the cases regardless of the size of the claim. The appellate courts have legislated that the district courts have to try cases involving prisoner claims for damages in amounts so small that, were the case brought in the state court, it would be relegated to the lowest court or the lowest magistrate.

evolve from violations of these statutes, the court faces an obvious dilemma. This court knows from practical experience that niggardly fee schedules discourage good lawyers. On the other hand, overly generous attorneys' fees might be productive of otherwise unworthy litigation.

In Corpus Juris Secundum[8] one finds the following:

> Where there is a controversy as to an attorney's fee, the determination of the amount thereof is within the discretionary power of the trial court, or on appeal, of the appellate court. Judicial determination of the value of an attorney's services, however, must be strictly kept within the limitations fixed by authority; and in making such determination, the court should exercise care and caution, to the end that only reasonable fees for services rendered be allowed; and neither the trial court nor the appellate court can, in adjusting such fee, arbitrarily ignore the undisputed evidence and the findings based thereon.[9]

Unfortunately, the Congress set no guidelines as to the assessment of fees and the matter is left entirely to the discretion of the trial judge (or the experts on the appellate level). This court finds no guidance, nor comfort in such cases as *Weeks v. Southern Bell Tel. & Tel. Co.*, 467 F.2d 95 (5th Cir. 1972) which says that the determination of attorney's fee is left to the sound discretion of the trial judge and should not be set aside unless there is a clear abuse of discretion. This is the sort of opinion, of course, which makes the trial judge a candidate for crucifixion on the cross of discretion (which is of no real help in the matter).

*Ellis v. Flying Tiger Corp.*, 504 F.2d 1004 (7th Cir. 1972) is authority for the fact that in awarding attorneys' fees the court must consider the benefits conferred upon the client and whether same are due to the direct effort and skill of the attorneys in-

volved. *Grunin v. International House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) is authority for the proposition that of the evaluation of an attorney's services must begin with consideration of the hours and the rate. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974), acknowledges that the trial judge ordinarily has a better opportunity to evaluate the attorneys' services than the appellate court, but calls upon the authority of the appellate court when there is a "clear abuse of discretion." In *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3rd Cir. 1973) the court held that "In awarding attorneys' fees the district judge is empowered to exercise his "informed discretion;" that the court may consider the overall value of the attorney's services in the case, the value of counsel's time spent (fixing a reasonable hourly rate for his time)—[taking account of the attorney's legal reputation and status] and other factors. On the other hand, *Rosenfield v. Black*, 56 F.R.D. 604 (D.C.N.Y. 1972) correctly states that the measure of proper attorneys' fees to be assessed is not always the time spent.

█ If this were an ordinary tort case, this court would be inclined to rely upon *Brunwasser v. Suave*, 400 F.2d 600 (4th Cir. 1968), *cert. denied*, 393 U.S. 1083, 89 S.Ct. 868, 21 L.Ed.2d 777, wherein the court considered the element of contingency. It would not be amiss to adopt such a philosophy in every tort case, so long as the court's consideration was consistent with the agreement between attorney and client, which, if not unconscionable, would have great weight. This court recognizes, as was stated in *Nowell v. Dick*, 413 F.2d 1204 (5th Cir. 1969) (citing *Dumas v. King*, 157 F.2d 463 (8th Cir. 1946)), that the considerations which may control the fixing of an attorney's fee necessarily are flexible and not absolute, and, if submitted without proof of the specific time involved, resolve them-

---

**8.** 7 C.J.S. Attorney and Client § 191d at 1093.

**9.** Reference is made to *Wolf v. Mutual Benefit Health & Accident Association*, 188 Kan. 694, 366 P.2d 219, and *Touchett v. EZ Paintr Corp.*,

14 Wis.2d 479, 111 N.W.2d 419, under the heading in Corpus Juris Secundum "Reviewing courts are experts entitled to fixed fee in disagreement with the trial court."

selves into a question of reasonableness. In *Courtesy Chevrolet, Inc. v. Tennessee Walking Horse Breeders & Exhibitors Assn.*, 393 F.2d 75 (9th Cir. 1968), the appellate court doubled the amount of attorneys' fees which the trial court had awarded and decreed:

> While the allowance of reasonable attorneys' fees is always a matter of delicacy—either when billed by the attorneys themselves or when fixed by the courts—the object always, of course, is to allow fair and just compensation for the services rendered, considering the time and skill employed, the experience brought to bear, and the results achieved.

■ During the post-trial discussion which this court scheduled because of the novelty of the question, counsel for the plaintiff stated that he thought he should have attorneys' fees of $1500 to $2000, citing the time he spent in his successful opposition to the pretrial motion of defendant Neal which plaintiff's counsel described as frivolous. This court at times readily awards such a fee if the award of the jury, or the amount of the final judgment for the plaintiff is somewhat in excess of this amount. From the facts and circumstances of this particular case, however, upon considering the time spent, the skill employed, the reputation and skill of counsel, the diligence of counsel which was evident in pursuit of the matter, and the objective of Congress in having attorneys adequately compensated, the court directs that the Clerk in this case add to the judgment the sum of $1,000.00 for attorneys' fees.

The Clerk shall enter judgment for $1500.00 for the plaintiff plus $194.83 costs plus $1,000.00 attorneys' fees.

AND IT IS SO ORDERED.