Leo ROSEN et al., Appellants,

v.

PUBLIC SERVICE ELECTRIC AND
GAS COMPANY.

Leo ROSEN et al.

v.

PUBLIC SERVICE ELECTRIC AND
GAS COMPANY, Appellant.

Morgan SWEENEY and Utility Co-Work-
ers Association, Appellants,

v.

PUBLIC SERVICE ELECTRIC AND
GAS COMPANY.

Morgan SWEENEY and Utility Co-Work-
ers Association

v.

PUBLIC SERVICE ELECTRIC AND
GAS COMPANY, Appellant.

Nos. 71-1893 to 71-1896.

United States Court of Appeals,
Third Circuit.

Argued Sept. 26, 1972.

Decided March 8, 1973.

George Duggan, Parsonnet, Parsonnet & Duggan, Newark, N. J., for appellants in Nos. 71–1893 and 71–1895, and cross-appellees in Nos. 71–1894 and 71–1896.

Luke A. Kiernan, Jr., Newark, N. J., for appellee in Nos. 71–1893 and 1895 and for cross-appellants in Nos. 71–1894 and 71–1896.

John de J. Pemberton, Jr., Acting Gen. Counsel, Julia P. Cooper, Chief, Appellate Section, Lutz Alexander Prager, Atty., E. E. O. C., Washington, D. C., for amicus curiae.

Before STALEY, VAN DUSEN and ROSENN, Circuit Judges.

## OPINION OF THE COURT

STALEY, Circuit Judge.

These are cross appeals from the judgment of the United States District Court for the District of New Jersey.[1]

That court found two versions of the Public Service Electric and Gas Company ("company") pension plans, which discriminated between employees on the basis of sex, violative of Title VII, § 703(a)(1) of the Civil Rights Act of 1964 ("Act"), 42 U.S.C. § 2000e–2(a)(1).[2]

Charges in the captioned cases were originally filed separately with the Equal Employment Opportunity Commission ("EEOC").[3] After the administrative remedies provided under the 1964 Act were exhausted, suits were brought in the district court. The cases were consolidated there after this court vacated a summary judgment in favor of the defendant and remanded the first of these actions.[4]

The district court held both plans to be violative of the Act and ordered the company to cease and desist from discriminating between men and women as to retirement benefits.[5] However, no award of compensatory damages was made. The plaintiffs have appealed from the denial of monetary relief; the company has cross appealed from the remainder of the judgment.

A pension plan was first instituted by the company in 1911.[6] According to its

---

1. Rosen v. Public Service Electric and Gas Co., 328 F.Supp. 454 (D.N.J.1971).

2. Section 2000e–2(a) provides in pertinent part:

 "It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. * * *"

3. The EEOC was permitted to file briefs as amicus curiae and to participate in oral argument.

4. Rosen v. Public Service Electric and Gas Co., 409 F.2d 775 (C.A.3 1969). The attack on the first pension plan was initiated by filing a charge of discrimination with the EEOC on November 15, 1965. On March 9, 1966, following unsuccessful conciliatory efforts by the com-

mission, suit was entered in the first of the captioned cases.

Subsequently, the complaint was amended to include in its scope the discriminatory feature of the modified pension plan. On appeal, this court remanded the first case with the suggestion that it be consolidated with a second suit filed on September 20, 1968, which raised the same issues as the amendment.

5. The court found that employees had retired under both plans.

 "* * * * The defendant's records disclose that during the period in question, being November 15, 1965, to the present, the following number of employees retired early: 6 females, 48 males." Rosen v. Public Service Electric and Gas Co., 328 F.Supp. 454, 467 (D.N.J.1971).

6. The 1911 plan in pertinent part provided as follows:

 "Section 3. Each male employee may at his option retire at age sixty-five

terms a female was permitted to retire on full pension at age sixty if she had completed twenty years of service. A male, in order to receive full benefits, was required to have attained the age of sixty-five and to have served at least twenty-five years. Early retirement was available to a man at sixty only if he had served thirty years and then only at a reduced pension. Women were discriminated against in that their mandatory retirement age was sixty-five whereas their male counterparts could continue working until age seventy. The first plan was revised as the result of collective bargaining between the defendant and representatives of its employees.[7]

The revised version which took effect on May 1, 1967, perpetuated the discriminatory features of the 1911 plan only to the extent that it favored women hired prior to its effective date. The controversial section provides:

"* * * in the case of a female employee who retires under the provisions of this Section 4, no reduction in the amount of the pension shall be made on account of service prior to May 1, 1967."

Under this plan the mandatory retirement age for all is seventy.

or thereafter upon completion of twenty-five years of service, and must retire at age seventy. Each female employee may at her option retire at age sixty or thereafter upon completion of twenty years of service, and must retire at age sixty-five.

"Section 4. Each employee who retires under the provision of this Pension Plan relating to normal retirement for age shall be paid for life, in monthly installments, a pension computed at the annual rate of 1% of the average annual wage or salary of such employee for the five years of highest earnings within the last ten years of the employee's service, multiplied by the number of years, and any fraction of a year, of the employee's service.

"Section 5. Each male employee may at his option retire at age sixty or thereafter but before attainment of age sixty-five upon completion of thirty years of service.

"Section 6. Each male employee who retires under the provisions of this Pension Plan relating to early retirement shall be paid for life, in monthly installments, a pension computed at the annual rate of 1% of the average annual wage or salary of such employee for the five years of highest earnings within the last ten years of the employee's service, multiplied by the number of years, and any fraction of a year, of the employee's service, and reduced by one-half of 1% for each month that such employee is less than age sixty-five at the time of his retirement."

7. The revised plan provides the following with regard to pension benefits:

"Section 3. Normal Retirement for Age.

"(1) Each employee may at his or her option retire at age sixty-five or thereafter, and must retire at age seventy.

"(2) Each employee who retires under the provisions of this Section 3 shall be paid for life, in monthly installments, a pension computed at the annual rate of 1% of the average annual compensation of such employee for the five years of highest earnings within the last ten years of the employee's service, multiplied by the number of years, and any fraction of a year, of the employee's service.

"Section 4. Early Retirement.

"(1) Each employee may at his or her option retire at age sixty or thereafter, but before attainment of age sixty-five upon completion of twenty years of service.

"(2) Each employee who retires under the provisions of this Section 4 shall be paid for life, in monthly installments, a pension computed at the annual rate of 1% of the average annual compensation of such employee for the five years of highest earnings within the last ten years of the employee's service, multiplied by the number of years, and any fraction of a year, of the employee's service, and reduced by one-quarter of 1% for each month that such employee is less than age sixty-five at the time of retirement, and by an additional one-quarter of 1% for each month that such employee is less than age sixty-two at the time of retirement, except that in the case of a female employee who retires under the provisions of this Section 4, no reduction in the amount of the pension shall be made on account of service prior to May 1, 1967."

## STANDING

 On appeal the standing of the plaintiffs to maintain this suit is questioned. Standing "concerns ＊ ＊ ＊ the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). The substantive issues must be considered to ascertain whether "there is a logical nexus between the status asserted and the claim sought to be adjudicated." Flast v. Cohen, 392 U.S. 83, 102, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968). Standing for purposes of the Civil Rights Act of 1964 was intended by Congress to be defined as broadly as is permitted by Article III of the Constitution. Hackett v. McGuire Brothers, Inc., 445 F.2d 442 (C.A.3 1971).

█ Rosen, the company contends, lost standing to contest the alleged discriminatory practices when he retired. We do not agree. He was an active employee when this action was commenced and does not lose standing merely by accepting his pension. Hackett, supra; see Jenkins v. United Gas Corp., 400 F.2d 28 (C.A.5, 1968). As one who was subject to the discriminatory provisions of the pension plans under consideration he has standing. Sweeney, an active male employee, also has a sufficient personal stake in the outcome of this case to assure that concrete adverseness will occur. See Kalur v. Resor, 335 F.Supp. 1 (D.D.C.1971).

█ The company urges that the union has standing to represent neither the active employees nor the pensioners.

Since both these classes are represented by other plaintiffs, we need not decide whose rights the union, as bargaining representative of the company's employees, has standing to assert.[8] See Title VII of the Civil Rights Act, 8 Duq. L.Rev. 1(1969).

## DISCRIMINATION

Section 703(a)(1) of the Civil Rights Act of 1964 states that it is an unlawful employment practice to discriminate on the basis of sex "against any individual with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e–2(a)(1); see Employment—Sex Discrimination, 12 A.L.R. Fed. 15 (1972). Whether retirement plans fall within the purview of the above language is the threshold question in this case. We answer it in the affirmative.

██ The EEOC which is charged with the responsibility of administering the Act has issued the following guideline.

"It shall be an unlawful employment practice for an employer to have a pension or retirement plan which establishes different optional or compulsory retirement ages based on sex, or which differentiates in benefits on the basis of sex." 37 Fed.Reg. 6837 (1972).

Such an administrative interpretation is entitled to great deference. Griggs v. Duke Power Co., 401 U.S. 424, 433–434, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). That the guideline was not promulgated until after this suit was initiated is of no moment. Rights which came into being when the Act was passed are not abro-

---

8. Unions have the apparent right to assert their members' rights in suits under the Civil Rights Act of 1964. See Rosen v. Public Service Electric and Gas Co., 409 F.2d 775, 780, n. 19 (C.A.3, 1969); Local 186 v. Minnesota Mining and Mfg. Co., 304 F.Supp. 1284 (N.D.Ind.1969). Retirement benefits of those employees who are not currently employed and have al-ready retired are not a mandatory subject of collective bargaining under the NLRA. Allied Chemical & Alkali Workers of America, Local No. 1 v. Pittsburgh Plate Glass Co., 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971). However, it does not naturally follow, as the company implies, that a union loses all interest in the fate of its members once they retire.

gated by administrative interpretation. Bartmess v. Drewrys U.S.A., Inc., 444 F.2d 1186 (C.A.7), cert. denied, 404 U.S. 939, 92 S.Ct. 274, 30 L.Ed.2d 252 (1971).

A reading of the statute convinces us that the commission's interpretation furthers the legislative purpose of the Act and is consistent with the plain meaning of the language employed.

"Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." Sprogis v. United Air Lines, Inc., 444 F.2d 1194, 1198 (C.A.7), cert. denied, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971).

Persuasive, also, is the fact that the language in the Labor-Management Relations Act, 29 U.S.C. § 159(a), similar to that employed in § 703(a)(1) of the Civil Rights Act of 1964, has been held to include retirement benefits. Inland Steel Co. v. NLRB, 170 F.2d 247 (C.A.7 1948), cert. denied, 336 U.S. 960, 69 S.Ct. 887, 93 L.Ed. 1112 (1949).

We hold, therefore, that § 703(a)(1) of the Act prohibits discrimination with respect to retirement benefits on the basis of sex. Other courts are in agreement with us on this point. Bartmess, supra; Fillinger v. East Ohio Gas Co., (E.D.O.1971). Clearly the plans in question violate the Act. They differentiate between men and women solely on the basis of sex, and such discrimination is prohibited. Rosenfeld v. Southern Pacific Co., 444 F.2d 1219 (C.A.9, 1971); Lansdale v. Air Line Pilots Association International, 430 F.2d 1341 (C.A.5, 1970); Bowe v. Colgate-Palmolive Co., 416 F.2d 711 (C.A.7, 1969); but cf. Gruenwald v. Gardner, 390 F.2d 591 (C.A.2), cert. denied, 393 U.S. 982, 89 S.Ct. 456, 21 L.Ed.2d 445 (1968).

We find no merit in the company's argument that the revised plan is valid because it resulted from collective bargaining.

"The rights assured by Title VII are not rights which can be bargained away—either by a union, by an employer, or by both acting in concert." Robinson v. Lorillard Corp., 444 F.2d 791, 799 (C.A.4), cert. dismissed, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971); see United Mine Workers of America v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); United States v. St. Louis-San Francisco Ry. Co., 464 F.2d 301 (C.A.8, 1972), cert. denied 409 U.S. 1116, 93 S.Ct. 913, 34 L.Ed.2d 700 (1973).

Nor, as the company contends, does the revised plan's provision for gradually phasing out the discrimination bring it into compliance with the Act. See 37 Fed.Reg. 6837 (1972); United States v. H. K. Porter Co., 296 F.Supp. 40 (N.D. Ala.1968).

The revised plan, according to the company, merely preserves pre-existing rights of females which cannot be diminished. This may be true. The apparent effect of § 15 of the pension plan and Article XVII of the collective bargaining agreement is to bar the company from reducing the benefits of females. However, the company is not precluded from raising men's benefits to the level of women in order to achieve equality. Such adjustments have been recognized as a proper means of achieving that end. Hays v. Potlatch Forests, Inc., 465 F.2d 1081 (C.A.8, 1972).

### REMEDY

On appeal the plaintiffs argue that compensatory damages should have been awarded to males who retired early under either of the discriminatory plans. With this we agree.

Section 706(g) provides that the court "may enjoin * * * and order such affirmative action as may be appropriate." 42 U.S.C. § 2000e–5(g).[9] "This grant of authority

---

9. A Senate Report referring to § 706(g) stated that "The provisions of this subsec-

tion are intended to give the courts wide discretion exercising their equitable pow-

should be broadly read and applied so as to effectively terminate the practice and make its victims whole." Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 721 (C.A.7, 1969). The relief is intended to restore those wronged to their rightful economic status absent the effects of the unlawful discrimination. Robinson v. Lorillard Corp., 444 F.2d 791 (C.A.4), cert. dismissed, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971). We are under a duty to render relief which will eliminate the "discriminatory effects of the past as well as bar like discrimination in the future." Louisiana v. United States, 380 U.S. 145, 154, 85 S.Ct. 817, 822, 13 L.Ed.2d 709 (1965); see Smith v. Young Men's Christian Association, 462 F.2d 634 (C.A.5, 1972).

Male employees did retire early under both versions of the pension plan.[10] These men now receive reduced pensions whereas women who retired under identical circumstances receive full benefits. The effective date of Title VII of the Civil Rights Act of 1964 was July 2, 1965. Men who have retired since that date with annuities reduced below those which they would have received had they been women must be compensated for the losses they sustained and are sustaining due to the discriminatory reduction in the amount of pensions on account of service prior to May 1, 1967, the effective date of the revised retirement plan, and after the effective date of the Act. Further, since we are of the view that the pension rights of active women employees which accrue before May 1, 1967, cannot be diminished, we hold that the retirement credit of males similarly situated must be increased for the relevant period between July 2, 1965, and May 1, 1967. This must be done to cure the effects of discrimination since the effective date of the Act.

Other courts have invoked equitable powers under the Act to bring one group of employees up to the economic level of another. Victims of sex discrimination have been awarded three years' wages which were lost due to early retirement. Fillinger v. East Ohio Gas Co., (N.D.O. 1971). Overtime benefits have been extended to male employees where state law required that women receive overtime pay. Hays v. Potlatch Forests, Inc., 465 F.2d 1081 (C.A.8, 1972); see Schaeffer v. San Diego Yellow Cabs, Inc., 462 F.2d 1002 (C.A.9, 1972). Further, the relief to be granted in the instant case is consistent with this court's decisions under the Equal Pay Act which serves the same fundamental purpose as the Civil Rights Act of 1964. See Hodgson v. Wheaton Glass Co., 446 F.2d 527 (C.A.3, 1971). In *Hodgson* we affirmed the judgment which awarded damages to effectuate the equalization of wage rates.

For the foregoing reasons this cause will be remanded to the district court for a determination of the damages consistent with this opinion.[11]

ers to fashion the most complete relief possible." Cong.Rec. 3462, March 6, 1972.

10. "Between July 1, 1965 and May 1, 1967 there were early retirements on pension by some male employees, members of the plaintiff Union, as well as during the period from May 1, 1967 to the date of the Stipulation." Rosen v. Public Service Electric and Gas Co., 328 F.Supp. 454 (D.N.J.1971).

11. Plaintiffs have not on appeal asserted all the potential claims of members of the class, such as the right of women employees who were involuntarily retired at age 65 to recover damages. In view of the policy underlying F.R.Civ.P. 23(a) (4) and 23(e), the district court on remand should consider directing notice to all class members in accordance with 23 (d) (2).