Vincent R. CHASTANG, Appellee,

v.

FLYNN AND EMRICH COMPANY
et al., Appellants,

The Equitable Trust Company, Defendant.

Vincent R. CHASTANG, Appellant,

v.

FLYNN AND EMRICH COMPANY
et al., Appellees.

Frank UGIANSKY, Appellee,

v.

FLYNN AND EMRICH COMPANY
et al., Appellants,

The Equitable Trust Company, Defendant.

Frank UGIANSKY, Appellant,

v.

FLYNN AND EMRICH COMPANY
et al., Appellees.

Nos. 74–2171 to 74–2174.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 3, 1976.

Decided June 10, 1976.

David S. Cordish, Baltimore, Md. (Cordish & Cordish, Baltimore, Md., on brief) for Flynn & Emrich Co. et al.

Harry Goldman, Jr., Baltimore, Md., for Chastang and Ugiansky.

Ramon V. Gomez, Atty., E. E. O. C., Washington, D. C. (Abner V. Sibal, Gen. Counsel, Joseph T. Eddins, Associate Gen. Counsel, Beatrice Rosenberg, Charles L. Reischel and Lutz Alexander Prager, Attys., E. E. O. C., Washington, D. C., on brief), for amicus curiae.

Before HAYNSWORTH, Chief Judge, BRYAN, Senior Circuit Judge, and WINTER, Circuit Judge.

WINTER, Circuit Judge:

Alleging that a profit sharing and retirement plan which provided differing benefits to male and female participants illegally discriminated on the basis of sex, Vincent R. Chastang and Frank Ugiansky brought suit against their employer, Flynn & Emrich Company (Company), the individuals comprising the members of the Profit Sharing Trust Committee (the Committee), and the corporate trustee under the plan, The Equitable Trust Company (Equitable). The district court found that the plan illegally discriminated against male employees. It awarded to plaintiffs as damages the difference between the amount of benefits they received and those that would be paid to similarly situated females; it dismissed Equitable from the suit; and it declined to award plaintiffs attorneys' fees. Plaintiffs,

the Company and the individual defendants have appealed. We affirm except with respect to the dismissal of Equitable.

## I.

In December, 1943, the Company established a non-contributory retirement plan for salaried employees. It executed an "Employees' Profit Sharing and Retirement Trust Agreement" (the plan) under which the Company makes contributions of a portion of its profits, if any, into a fund from which payments are made to salaried employees upon their retirement. The fund is administered by the Committee, which is and has been comprised primarily of officers and/or directors of the Company. Equitable acts as corporate trustee for the plan. The duties of the trustee are confined to record keeping, investing funds and paying out benefits in accordance with instructions given it by the Committee.

While the plan permits early retirement for male and female employees, males, prior to 1970, faced greater obstacles than females in qualifying for full benefits in the event they elected early retirement. The obstacles were derived from the provisions of the plan as to when an employee's interest in the fund became vested or non-forfeitable.[1] Beginning at the end of her second year of employment, 10% of a woman's proportionate share of the fund established by the plan would become non-forfeitable for each year of her employment. Thus, at the end of eleven years, 100% of her proportionate interest in the fund would have become non-forfeitable, and she would receive full benefits if she retired at any time thereafter. By contrast, only 5% of a man's proportionate interest in the fund would become non-forfeitable for each year of employment after the first two years. Further, after a man had accumulated a 50% non-forfeitable interest in his proportionate

share of the fund, the percentage would generally not increase unless he worked until age 65,[2] at which time a male employee became entitled to full benefits based upon a 100% non-forfeitable interest.

Chastang was employed by the Company in February, 1937, and retired effective July 25, 1968, at the age of 52. Ugiansky was employed by the Company in January, 1951, and retired effective March 24, 1969, at the age of 42.[3] Each man received only 50% of his proportionate share of the retirement fund. After filing complaints with the Equal Employment Opportunity Commission and receiving "right to sue" letters, each brought suit in district court alleging that the plan unfairly discriminated against male employees.

## II.

It is well settled that retirement benefits are within the "compensation, terms, conditions, or privileges of employment" covered by § 703(a) of Title VII, 42 U.S.C. § 2000e–2(a). *Rosen v. Public Service Electric & Gas Co.,* 477 F.2d 90 (3 Cir. 1973); *Bartmess v. Drewrys U. S. A., Inc.,* 444 F.2d 1186 (7 Cir.), cert. denied, 404 U.S. 939, 92 S.Ct. 274, 30 L.Ed.2d 252 (1971). *See also Gilbert v. General Electric Co.,* 519 F.2d 661, 663 (4 Cir.), cert. granted, 423 U.S. 822, 96 S.Ct. 36, 46 L.Ed.2d 39 (1975); *Peters v. Missouri-Pacific R. R. Co.,* 483 F.2d 490 (5 Cir.), cert. denied, 414 U.S. 1002, 94 S.Ct. 356, 38 L.Ed.2d 238 (1973). These cases all proceed on the well established "business necessity" test established in *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 544, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971), and *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). *Martin Marietta* held that under Title VII, disparate treatment on the basis of sex is sustainable only if the employer can show that the disparity is required either by

---

1. In 1970, an amendment was adopted which equalized the vesting provisions for men and women employees.

2. A male employee would also receive full benefits based upon a 10% yearly proportionate accrual if the employee died or was totally

incapacitated, entered the armed forces during time of war, or voluntarily or involuntarily was shifted from a salaried basis of compensation to an hourly or wage basis of compensation.

3. Ugiansky was reemployed by the Company in 1971.

"business necessity" or by a *bona fide* occupational qualification reasonably necessary to the normal operation of the business. Of course, in the instant case there is no claim that only women can perform the duties of the positions covered by the plan.

The Company and the individual defendants argue that the "business necessity" test is inapplicable to sexual, as distinguished from racial, discrimination where the difference in treatment of employees of different sexes is justified as a means of redressing the disparity between the economic and physical capabilities of men and women. They rely on cases such as *Kahn v. Shevin,* 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974), and *Gruenwald v. Gardner,* 390 F.2d 591 (2 Cir. 1968), which uphold the rights of the state and federal governments, respectively, to favor women in order to compensate for other disabilities which females face in American society.

■ We are not persuaded. *Martin Marietta* is certainly to the contrary with respect to qualifications for employment, and we see no basis on which to treat qualifications for employment differently from qualifications for retirement. Moreover, defendants' authorities did not deal with Title VII, but rather with the equal protection and due process clauses of the fourteenth and fifth amendments respectively. While these cases hold that these constitutional provisions require only that a rational basis be shown to justify discrimination between men and women,[4] Title VII, by contrast, precludes *all* discrimination on the basis of sex unless justified by a compelling business reason. *Gilbert v. General Electric Company,* 519 F.2d at 667; *Robinson v. Lorillard Corporation,* 444 F.2d 791 (4 Cir.), cert. denied, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971). Furthermore, in the instant case, the Company has not established even a rational basis for the disparity in the retirement plan. The only justification put forth is that because of lack of physical strength women are unable to qualify for higher-paying Company jobs involving manual labor, and thus should be favored in the pension plan in order to compensate them for being relegated to lower-paying positions. But the plan at issue does not apply to manual laborers; it applies only to clerical and office workers. As the district court observed, "It is a *non sequitur* to justify a discriminatory practice . . . on the basis that male manual foundry workers earn more than female office workers when the males who are discriminated against under the retirement plan are not the manual foundry workers but the male supervisory and office personnel." *Chastang v. Flynn & Emrich Co.,* 365 F.Supp. 957, 966 (D.Md.1973). Since the disparity in benefits does not meet even a rational basis test, it must be held in violation of Title VII.

■ We find no other business necessity to justify the disparate treatment. The Company's concern to compensate women because they generally earn less than men is belied by its failure to extend benefits to female foundry workers, the lowest-paid of the female employees. The possible justification of discouraging early retirement by male employees—suggested and rejected by the district court—is not pressed on us on appeal.

### III.

■ Each plaintiff was awarded damages equal to his total proportionate share of the retirement fund less the amount he actually received upon leaving the Company's employ. The Company and the individual defendants contend that this award is a forbidden retroactive application of Title VII. *See Robinson v. Lorillard Corporation,* 444 F.2d 791 (4 Cir.), cert. denied, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971). They argue that damages should be limited to those benefits which were earned subsequent to July 2, 1965—the effective date of the Civil Rights Act of 1964.

---

4. Other cases, which we need not explore, hold or suggest that discrimination on the basis of sex is constitutionally permissible only if a more stringent test than the "rational basis" test is satisfied.

We recognize that *Rosen v. Public Service Electric & Gas Co.,* 477 F.2d 90 (3 Cir. 1973) on remand, 11 FEP Cases, 330 (D.N.J. 1974), aff'd without opinion, 527 F.2d 645 (1976), tends to support the position of the Company and the individual defendants; nonetheless, we agree with the district court.

Each year that plaintiffs worked for the Company, both prior and subsequent to the effective date of the Act, they received the same credit for their proportionate share of the fund as did female employees. In the fund's annual statements and its advice to each participant of his interest in the fund, plaintiffs were treated as having the proportionate interest in the fund to which they would be entitled if they retired at normal retirement age. The reduction of their interest occurred by invoking the forfeiture provisions which became effective upon their early retirement. It is true that authorization for forfeiture existed from December 31, 1942—the date on which the plan was established—but the possibility of forfeiture was inchoate and not effective until they elected early retirement. Moreover, forfeiture was selective—males under certain conditions could receive full benefits upon early retirement—so that whether forfeiture was to be invoked could not be determined until the time of retirement. Plaintiffs' early retirement did not take place until after the effective date of the Act. Thus, we see no retroactive application of the Act.

It is significant also, when the plaintiffs were divested of one-half of their respective interests due to their early retirement, the fund in effect received a windfall which did not affect the rights of any former Company employees who retired prior to the effective date of Title VII. When a participant in the plan retires, his interest in the fund is segregated and separated; any windfalls which later accrue to the benefit of the fund have no effect on that segregated interest; they are simply divided ratably among the then remaining unretired participants in the plan.

We think that the district court was correct in holding that the 50% divestiture provision was a discriminatory penalty imposed upon the plaintiffs on the dates of their respective retirements, that the invalidation of the discrimination involved no retroactive application of the Act, and that the court was correct in awarding damages equal to the total value of the divestiture. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).

## IV.

We turn to plaintiffs' contention that the district court erred in dismissing Equitable as a defendant. We agree that there was error.

■■ The district court dismissed Equitable because the latter "was little more than a nominal trustee," had "limited control over the administration of the fund," and was "a mere passive participant in the discrimination at the direction of the Trust Committee." While these findings may be correct, the Act makes no distinction between "active" and "passive" participants in acts of discrimination. Equitable was not a mere volunteer; it was a corporate trustee for compensation, and it continued to act as trustee even after the trust instrument became illegally discriminatory on its face. As corporate trustee for the plan, Equitable should be bound to carry out any conclusion reached by the court with respect to the plan's illegality. Thus, it was proper to join Equitable in this suit, and Equitable should have been retained as a party until a final decree was entered. Of course, because of Equitable's passive role in the illegal discrimination, it should not be held liable for the damages awarded to plaintiffs. It should, however, bear its share of plaintiffs' court costs, no part of which should be assessed against plaintiffs.

## V.

■ Finally, plaintiffs challenge the refusal of the district court to award them reasonable attorneys' fees. *See* 42 U.S.C. § 2000e–5(k). While the award of such fees

rests with the sound discretion of the district court, prevailing parties in Title VII actions should ordinarily be awarded attorneys' fees absent special circumstances would render such an award unjust. *Albemarle Paper Co. v. Moody, supra; Robinson v. Lorillard Corporation,* 444 F.2d at 804. We think that such circumstances exist here, so that it cannot be said that the district court abused its discretion.

Although the Company was the originator of the illegal discrimination, it originated it on December 31, 1942, when such discrimination was not illegal. Having established the plan, the Company did not retain an unrestricted right to amend the plan. It could accomplish an amendment only with the concurrence of a majority of the five members of the Committee named by the Company to administer it. Notwithstanding that the Act became effective on July 2, 1965, EEOC did not take the position that differences in optional or compulsory retirement ages based on sex violated Title VII until February 21, 1968. *See* 29 C.F.R. § 1604.31. Even so, on September 13, 1968, general counsel to EEOC gave an opinion that retirement plans in conflict with the Commission's guidelines because they discriminated on the basis of sex could be gradually adjusted to bring them into conformity with the guidelines and that the judgment of the parties as to a proper schedule for adjustment "would carry considerable weight."

Plaintiff Chastang retired July 25, 1968, and plaintiff Ugiansky retired March 24, 1969, but was later rehired even though he was then in litigation with the Company. The Company, with the concurrence of a majority of the Committee, caused the plan to be amended on December 8, 1970, to obviate the sex discrimination on which plaintiffs base their claim. Plaintiffs brought their suits on June 2, 1971, on their own behalf and not representing any class.

■ We have already stated that Equitable should not be held liable for damages although it should bear its share of plaintiffs' court costs; nor do we think that the Company should pay attorneys' fees. We cannot say that it failed to act with reasonable dispatch as soon as a murky area of the law was clarified. It redressed its unintentional violation of the Act, and from the chronology of events we cannot infer that plaintiffs' law suits were a contributing factor. Of course, the Company's good faith alone would not insulate it from making plaintiffs whole, *Albemarle Paper Co. v. Moody, supra,* but there is more here. It had no pecuniary interest in the fund it had established; it therefore had no economic incentive to violate the Act; and, more importantly, it had no right unilaterally to alter the schedule of benefits for participants in the plan before or after retirement.

Similarly, the Committee administering the plan had no right to change it unilaterally. It, too, proceeded with reasonable dispatch in amending the plan once the need for amendment was established. It, of course, did not act as employer; participants in the plan were not its employees; its only interest in the funds it administered was a fiduciary one—not one from which its members could draw any personal benefit; and it did not originate the discrimination which subsequently became illegal. At most, it participated in a passive act of discrimination which became illegal because of a change in the law.

Should attorneys' fees be awarded against the fund, the net effect would be to penalize innocent participants in the plan. They engaged in no discriminatory act, active or passive. Because the plan was amended to eliminate its illegally discriminatory aspects before plaintiffs' suits were filed, they cannot be said to have derived any benefit, direct or indirect, from the litigation.

In short, in denying an award of counsel fees, the district court's finding of special circumstances to deny the award is supported factually, and we cannot say that the district court exceeded its discretion.

*REVERSED IN PART; AFFIRMED IN PART. PLAINTIFFS TO RECOVER COSTS.*

ALBERT V. BRYAN, Senior Circuit Judge (dissenting):

The major difficulty I have with the majority opinion is its retroactive application of the Civil Rights Act to the pension plan's benefits for the years (the pre-Act years) before the statute became effective. I find no fault with the Act's vitiation of the forfeiture of benefits for the years after the Act (the post-Act years) was effective. The following sketch of appellee Chastang's participation is offered to illustrate the two periods:

| | | |
|---|---|---|
| Feb. 1937 | : | Chastang employed |
| 1943 | : | Plan established |
| | *22 yrs. of benefits before Act* | |
| July 2, 1965 | : | Civil Rights Act effective |
| July 25, 1968 | *3 yrs. of benefits after Act* | Early retirement of Chastang and forfeiture at age 52 |
| | Mandatory retirement at age 65 | |

As the majority carefully explains, for every year of their employment after the first, each of the appellees in accordance with the plan were credited by the Company with a specified percentage of his interest in the retirement fund, which would be the share payable to him on the date fixed by the plan for his mandatory retirement. Earlier retirement was permitted all employees but a male employee retired under pain of forfeiture of one-half of the share in the fund then credited to him, that is, 50% of the total of the yearly contributions made by the Company to the fund for the credit of the employee. No such penalty was exacted of female employees and this is the asserted discrimination in suit.

Both appellees took advantage of early retirement; whereupon the Company paid each of them 50% of the total sum to his credit in the fund. This amount was half of the total of the employer's annual contributions for both of the two employment periods: (1) the years before the Act's effective date, July 2, 1965, and (2) the years running from that date to the day of early retirement. The majority now requires the Company to pay these employees the remaining 50% for both the pre- and post-Act years holding that the Act forbids the reduction on early retirement, terming it discrimination against the appellees on the basis of sex.

My disagreement is with so much of the decision as applies the Act to the pre-Act contributions. This legislation had no effect prior to July 2, 1965, *Robinson v. Lorillard Corp.*, 444 F.2d 791 (4 Cir.), cert. denied, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1976). Thus, of necessity it could not preclude the plan's reduction in the pre-Act years' entitlements. The majority puts its ruling on this syllogism: the early retirement occurred post-July 2, it triggered the reduction, and so the reduction was effectuated post-July 2, and so not retroactively. This conclusion, even if accepted arguendo, responds to only a part of the question here; it wholly ignores the areas of impact of the forfeitures. No matter when activated, the forfeiture has provinces of effect. The essential inquiry is what was the scope of the reaction. The answer, obviously, is that the play of the forfeiture was on the pre-Act years as well as the post-Act years. The majority allows the Act to nullify the reduction in the pre-Act period and so adapts the law retrospectively.

The unreality of applying a post-Act early retirement plan to pre-Act accrued benefits is revealed by a simple demonstration. Supposing the early retirement occurred one day after the effective date of the Act, July 3, 1965, it would strain reason not to apply the forfeiture to the pre-Act accruals. Just as illogical is it when the forfeiture occurs three years, as here, after the inception of the Act. Retroactivity of the Act to pension plans has been twice denied by the Third Circuit: *Rosen v. Public Service Electric & Gas Co.*, 477 F.2d 90 (1973) and *eo nomine*, 527 F.2d 645 (1976) with opinion unpublished.

As if significant, the majority observes that the 50% deduction upon early retire-

ment resulted each time in a "windfall" to the fund. I fail to grasp how this circumstance argues the majority's position. The fact that the money reverted to the fund is no ground for disbursing it to early retirees. The windfalls do not enter the Company's coffers. It, not the employees, contributes all the moneys comprising the trust, but the Company is not the beneficiary of the reversions. The fund is the recipient. The 50% cancellations of the credits may well give added strength to the fund against unforeseeable obligations. For these reasons I think, too, that no monetary judgment in this case would lie against the Company.

Finally, the plan's payments are in no aspect akin to the employment seniority rights which have been the subject of litigation under the Civil Rights Act. See, e. g., *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976) and *Robinson v. Lorillard Corp., supra*, 444 F.2d 791 (4 Cir.), cert. denied, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1976). There employees who were denied seniority post-Act were allowed to invoke proof of pre-Act discrimination practices to establish that post-Act denials were but a continuation of a prior pattern of discrimination. The pre-Act conduct was properly looked to as responsible for the loss of rightful claims of seniority. It included charges of unwarrantable suppression of rights, unfair classifications of standings as well as unjust treatment generally. There is, plainly, no likeness in these issues to those in this action. Here, no claimant's entitlement is shaped by antecedent circumstances.

I would vacate the order of the District Court insofar as it directs any of the defendants to pay the plaintiffs the 50% reduction of their benefits for the years preceding July 2, 1965.