**Joe BUSH et al.**

v.

**Robert E. BAYS et al.**

**Civ. A. No. 77–0472–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Nov. 22, 1978.

61

C. Cooper Geraty, Cape Charles, Va., for plaintiffs.

Robert C. Oliver, Jr., Commonwealth's Atty. for Northampton County, Eastville, Va., for defendants.

MEMORANDUM

WARRINER, District Judge.

This is an action brought by eight individuals on behalf of themselves and all persons similarly situated challenging certain regulations of the Commonwealth of Virginia as being contrary to the Food Stamp Act, 7 U.S.C. § 2011, *et seq.* Plaintiffs allege that defendants have deprived them of their federal statutory right to receive food stamp coupons in violation of 42 U.S.C. § 1983. Jurisdiction is asserted under 28 U.S.C. §§ 1337, 1343(3), 1343(4), and 1361.

On 22 September 1978 this Court approved a consent agreement which resolved what plaintiffs alleged to be the substan-

tive dispute between the parties. The sole remaining issue for this Court to resolve is the liability of the defendants for plaintiffs' attorneys' fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (hereinafter the Act). All the parties have filed their briefs on this question, and the Court has had the benefit of oral argument by counsel in open court. Thus, the matter is ripe for decision.

■ Defendant Allen D. Richardson, Superintendent of the Northampton County Department of Social Services, has challenged the basis for the Court's jurisdiction, arguing that this case is actually one to interpret and enforce the provisions of the Food Stamp Act, and not a civil rights case at all. Unless the plaintiffs' claim states a cause of action under 42 U.S.C. § 1983 there is no authority for the Court to award attorneys' fees in this case. Therefore, the Court must examine the basis for its jurisdiction and determine whether this case is maintainable under § 1983 or whether jurisdiction is more properly of the federal question variety. *See*, 28 U.S.C. §§ 1331, 1337.

■ There is substantial authority that federal district courts' jurisdiction to consider a claim such as is presented in this case, requiring an interpretation of the Food Stamp Act, lies under the commerce provision of 28 U.S.C. § 1337. *E. g., Liddie v. State of California*, 478 F.2d 552 (9th Cir. 1973); *Turchin v. Butz*, 405 F.Supp. 1263 (D.Minn.1976). That section does not require that a plaintiff allege any minimum amount in controversy in order to establish district court jurisdiction. However, jurisdiction founded upon § 1337, while sufficient to permit the Court to act on plaintiffs' prayer for relief, is not sufficient to support an award of attorneys' fees under the Civil Rights Attorney's Fees Awards Act of 1976.

■ Therefore, the Court must consider whether plaintiffs' complaint states a cause of action under § 1983. If so, jurisdiction must be found either under the general grant of federal question jurisdiction found in 28 U.S.C. § 1331 or under the special jurisdictional provision for civil rights cases, 28 U.S.C. § 1343. If jurisdiction for plaintiffs' purely statutory claims may only be found under § 1331, then plaintiffs' complaint does not properly allege jurisdiction against any but the federal defendant because it does not contain an allegation of the requisite amount in controversy. Therefore, the Court is without jurisdiction to award attorneys' fees in this case unless the Court's jurisdiction over plaintiffs' statutory § 1983 claim is found under § 1343(3) or (4).

The trouble with this case springs from the fact that although § 1983 refers by its terms to federal "law" the jurisdictional section which provides for jurisdiction over civil rights cases refers only to "any Act of Congress providing for equal rights of citizens," and "any Act of Congress providing for the protection of civil rights." The Courts of Appeals are divided on the question of whether § 1343(3) and (4) provide jurisdiction over § 1983 actions which are purely statutory in nature, such as the present case. The First, Second and Third Circuits have each held that § 1343 does not provide such jurisdiction. *Randall v. Goldmark*, 495 F.2d 356, 359 (1st Cir. 1974); *Andrews v. Maher*, 525 F.2d 113, 119 (2d Cir. 1975); *Gonzalez v. Young*, 560 F.2d 160, 166–9 (3d Cir. 1977), *cert. granted*, 434 U.S. 1061, 98 S.Ct. 1232, 55 L.Ed.2d 761 (1978). These cases, which look to the substance of the complaint, each hold that the plaintiff's claim arose not under § 1983 but under the particular federal statute whose implementation by the State the plaintiff was challenging. The Fourth and Fifth Circuits, however, looking to the form of the complaint, have held that suits to vindicate federal statutory rights under § 1983 are within the jurisdictional grant found in § 1343(3), *Blue v. Craig*, 505 F.2d 830, 842 (4th Cir. 1974); *Houston Welfare Rights Organization, Inc. v. Vowell*, 555 F.2d 1219, 1221 (5th Cir. 1977), *cert. granted*, 434 U.S. 1061, 98 S.Ct. 1232, 55 L.Ed.2d 761 (1978).

This Court is of course bound by the decision of the Fourth Circuit. Fortunately, on 21 February 1978 the Supreme Court granted certiorari to hear both *Gonzalez v.*

*Young* and *Houston Welfare Rights Organization, Inc. v. Vowell,* and provided that these two cases should be heard at the same time. It appears, therefore, that a definitive answer on this question will be forthcoming in the near future. In the meantime this Court must apply the law as it stands in the Fourth Circuit. Accordingly, the Court concludes that plaintiffs' case states a claim under § 1983 cognizable under § 1343(3) and that the Civil Rights Attorney's Fees Awards Act of 1976 applies to this case. That statute reads in pertinent part: "In any action or proceeding to enforce a provision of §§ 1977, 1978, 1979, 1980, and 1981 of the Revised Statutes [42 U.S.C. §§ 1981–1983, 1985, 1986] . . . the Court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

There are two salient features of this Act which warrant consideration. The first is that only a "prevailing party" may be awarded an attorney's fee. The second is that the award of an attorney's fee under the Act is not automatic, but is within the discretion of the Court. The Court has already noted that attorney's fees may be awarded under the Act only if the underlying lawsuit was brought to enforce a provision of one of the enumerated statutes, in the present case, § 1983.

■ With this in mind, the Court will consider plaintiff's claim for an award of attorneys' fees against the United States and against the three named federal officials in this case. Plaintiffs appear to have abandoned any claim for an award of attorneys' fees against the United States. This is just as well, because the law will not support a view that the Act provides for attorneys' fees against the United States. 28 U.S.C. § 2412; *Shannon v. United States Dept. of Housing and Urban Development,* 577 F.2d 854 (3d Cir. 1978).

■ Plaintiffs argue that the three federal officials who are named defendants in this case are subject to payment of attorneys' fees in their individual capacities. Plaintiffs' theory is that the federal offi-

cials were involved with the State defendants in taking the actions complained of in this suit, and that therefore, these federal officials acted under color of State law to deprive plaintiffs of their rights. Plaintiffs could refer the Court to no authority to support this novel theory. Their convoluted argument does not change the fact that the federal officials who are parties to this lawsuit acted at all times under color of federal law and at no time under color of any State law. Because § 1983 does not apply to those who act under color of federal law, plaintiffs' suit against the federal defendants is not brought to enforce a provision of § 1983. Thus, there is no authority under the Act to award any attorneys' fees against the federal parties to this lawsuit. The Court is unaware of any other authority, absent a finding of bad faith, which would permit an award of attorneys' fees against the federal parties. As the record will not support a finding of bad faith on the part of the federal authorities, the Court must hold that the federal parties are not liable for any attorneys' fees.

■ The Court further notes that the federal defendants, as individuals, are not required to take any action whatsoever by the terms of the Consent Agreement. The United States Department of Agriculture, which is not a party, is required to take certain action. Under these circumstances, the Court agrees with counsel for the federal defendants that the plaintiffs did not prevail against these defendants. Accordingly, even if the Act applied to the federal defendants, no award of attorneys' fees under the Act would be permitted against them individually.

The plaintiffs suggest that the federal defendants have waived any defense of sovereign immunity. However, the Court's decision to deny attorneys' fees against the federal defendants in this case is not based in any way upon any defense of sovereign immunity. There simply is no authority for this Court to award attorneys' fees in a case of this kind against the federal officials.

■ The State and local defendants argue that if the federal defendants are entitled to sovereign immunity as to attorneys' fees, then so are the State and local defendants, who were merely carrying out a federal program pursuant to the regulations and instructions promulgated by the federal government. This argument is no comfort to the State and local defendants, however, because the failure of the Court to award attorneys' fees against the federal defendants is not based upon sovereign immunity. In any case, the fact that the State and local defendants were administering a federal program, and that every step in their administration of that program was strictly controlled by federal regulation, cannot alter the fact that these defendants simply are not officials of the United States and that their authority to act or refrain from acting was based upon a validly promulgated State regulation. Strictly speaking, the State and local defendants acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or territory." Regarding only the letter of § 1983, and disregarding its spirit, the State and local defendants subjected themselves to suit under § 1983 and, thereby, to an award of the attorneys' fees under the Act.

Nor is the Eleventh Amendment a bar to an award of attorneys' fees in this case. In *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), the Supreme Court squarely held that the Eleventh Amendment did not bar the award of attorneys' fees against a State. In so doing, the Court relied upon ancient precedent that rejected claims of Eleventh Amendment immunity for awards of costs against States in federal court. Since an award of attorneys' fees under the Act was held to be an award of "costs," the Supreme Court viewed the award as being outside the bar of the Eleventh Amendment. *Hutto v. Finney,* 437 U.S. at 694–696, 98 S.Ct. 2565. Accordingly, the Court will now proceed to consider whether an award of attorneys' fees under the Act is appropriate against the State and local defendants.

■ The first consideration raised by the State and local defendants is whether plaintiffs are actually the prevailing parties within the meaning of the Act. Defendants argue that plaintiffs are not properly prevailing parties because plaintiffs' lawsuit was not the impetus for the changes which defendants made in the food stamp program. The Court agrees with defendants that "no award is required if the court determines that plaintiff's suit was completely superfluous in achieving the improvements undertaken by defendants on plaintiff's behalf." *Nadeau v. Helgemoe,* 581 F.2d 275, 281 (3d Cir. 1978). It is necessary that the Court examine the chronology of events to determine whether or not this suit was in fact superfluous to the improvements in the food stamp program embodied in the Consent Agreement and implemented by the defendants in this case.

■ A review of the plaintiffs' complaint shows that plaintiffs sought two changes in the administration of the food stamp program in Accomack County and Northampton County, Virginia. First, the plaintiffs sought to end the practice of attributing income to destitute migrant farmworker households which had not actually been received in hand by the applicant on the day of application. Second, the plaintiffs sought to require the issuance of food stamps immediately upon application by destitute migrant farmworkers in an over-the-counter disposition.

On 30 June 1976 the case of *Gutierrez v. Butz,* 415 F.Supp. 827 (D.D.C.1976) was decided. That case held that it was a violation of the Food Stamp Act to attribute income to migrant farmworker households which had not been received at the time of application. Shortly thereafter, the Department of Agriculture began to take steps to comply with the *Gutierrez* decision. Eventually, these efforts led to the issuance of Food Stamp Transmittal 45 which was received in Accomack County on 24 June 1977. Transmittal 45, however, still permitted some income to be anticipated. This was corrected by a letter dated 12 August 1977 from Kenneth C. Gossom. Gossom's

letter itself contained an error in one of the examples used to illustrate the change in policy. The example set out an incorrect certification period. This error was corrected by the end of August 1977. The present lawsuit, dealing in part with the income-receipt problem, was filed on 16 August 1977. Thus, the chronology of events shows that the anticipation of income problem was sub-, stantially solved on the day this lawsuit was commenced. Accordingly, the Court finds that plaintiffs' suit was completely superfluous in obtaining the change in the income attributable to migrant farmworker households in Accomack and Northampton Counties.

■ Plaintiffs' lawsuit also sought same-day over-the-counter issuance of food stamp coupons. The main obstacle to same-day issuance of food stamp coupons was the requirement in the regulations promulgated by the U.S. Department of Agriculture that the local defendants contact at least one collateral source to verify the truth of the facts set forth in an application. In *Aiken v. Obledo,* 442 F.Supp. 628 (E.D.Cal.1977) the Department's requirement of a collateral contact was held to be invalid. The Department of Agriculture issued regulations in compliance with the *Aiken* decision in the spring of 1978. The issuance of these regulations removed the collateral contact requirement and for the first time made same-day mailing of food stamp coupons to eligible migrant farmworker households possible. On or about 1 June 1978 the local defendants implemented a system calling for same-day mailing of food stamp coupons to destitute migrant farmworker households.

On or about 7 June 1978 the parties met to discuss the possibility of entering into a Consent Agreement in this case. The local defendants proposed a Consent Agreement that was merely a recitation of the procedures which they had recently implemented. Counsel for plaintiffs sought and obtained a

relatively minor modification in the proposal.[1] Destitute migrant farmworkers were to be permitted the option of having their food stamp coupons mailed to them at their labor camp address, as was the practice, or at General Delivery in the county seat. The local defendants also agreed to mail food stamp coupons early in the day as well as at the close of business each day. The effect of these changes was to permit those applicants who applied early on any given day and were eligible for immediate issuance of food stamps to pick up their food stamps that afternoon at the post office in the county seat. In this respect, and in this respect only, did plaintiffs prevail in their lawsuit.

Defendant Diana Hemphill testified that Accomack County implemented the expedited delivery of food stamps in response to changes in the federal and State regulations governing the issuance of food stamps, and not in response to plaintiffs' lawsuit. However, counsel for both local defendants admit that plaintiffs may be said to have prevailed in gaining the agreement of the local defendants to mail the food stamp coupons twice daily and to provide the option of mailing to General Delivery rather than to the labor camp address of the recipients.

Thus, the Court must consider the second part of the *Nadeau* test. In *Nadeau,* the First Circuit said:

> Even if plaintiffs can establish that their suit was causally related to the defendants' actions which improved their condition, this is only half of their battle. The test they must pass is legal as well as factual. If it has been judicially determined that defendants' conduct, however beneficial it may be to plaintiffs' interests, is not required by law, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense. [581 F.2d at 281.]

1. The Consent Agreement also provided for an "outreach worker" but experience has shown that this effort is a waste of time and money. It has resulted in no significant benefit to plaintiffs. Further, there is no showing that defendants were legally obligated to hire such a worker.

The Court is not aware of any law or decision which would require that the local defendants mail food stamp coupons early in the day or mail them to a General Delivery address as opposed to an actual residence address. The difference in the time of receipt of the food stamp coupons mailed to a General Delivery address is apparently no more than a day. A one-day delay in the issuance of food stamps to qualified recipients will not frustrate the policy of Congress in enacting the Food Stamp Act "to safeguard the health and well-being of the Nation's population and raise levels of nutrition among low-income households." 7 U.S.C. § 2011. While it may result in some deplorable pangs of hunger for those unable to find food for one day, it will not have a serious effect on the recipient's level of nutrition. Accordingly, the Court finds that in implementing twice-daily mailings of food stamp coupons to General Delivery addresses the local defendants acted entirely gratuitously and granted plaintiffs relief which was not their right under the law. Thus, the relief achieved by the plaintiffs does not meet the legal test for prevailing under *Nadeau*.

It is apparent to the Court that the attorneys for the plaintiffs in this case merely caught hold of a train on its way out of the station and are seeking to ride it to a substantial award of attorneys' fees. Plaintiffs' lawsuit played no part in firing the boiler, getting up a head of steam, or opening the throttle. Plaintiffs just went along for the ride. Accordingly, the Court finds that plaintiffs are not prevailing parties within the meaning of the Act.

In any event, even if plaintiffs were prevailing parties within the meaning of the Act, the special circumstances present in this case would render an award of attorneys' fees against the State and local defendants unjust. The special circumstances present in this case are remarkably similar to those present in *Chastang v. Flynn & Emrich Co.*, 541 F.2d 1040, 1045 (4th Cir. 1976). *Chastang* is a Title VII case but the legislative history of the Act is clear that the courts are to be guided by the interpretation of other attorneys' fees awards acts in making their decisions under this Act.

In *Chastang* defendant company initiated a pension plan for its employees in 1942. A Committee, uncontrolled by defendant, was appointed to administer the plan. The defendant company had no authority to change the plan without the concurrence of this independent Committee. Effective in July 1965 the Congress enacted the Civil Rights Act of 1964. The EEOC, charged with interpreting the Act, initially found no violation of the Act in the differential between male and female pensioners prescribed by the plan. Later, in 1968, the EEOC called for a gradual changeover to delete sex differentials. Despite its inability to control the pension plan, defendant company was able to convince the Committee that the plan should be amended and by December 1970 the differential was abolished. The changing legal aspect of sex biased pension plans is well documented in Judge Bryan's dissent. 541 F.2d at 1046.

In view of the fact that the defendant company "proceeded with reasonable dispatch to amend the plan once the need for amendment was established;" in view of the fact that the previous discrimination had not been maintained for the pecuniary benefit of defendant company; in view of the absence of an economic incentive to defendant company to violate the law; in view of its inability to amend the plan wholly on its own volition; in view of defendant company's good faith throughout, the Court of Appeals found "special circumstances" existed which would make it unjust to award costs in the form of attorney's fees.

 Applying this standard to the present case, the Court finds that the State and local defendants did not have the unilateral right to amend the regulations in any significant respect. The State and local defendants have acted with reasonable dispatch as soon as the impact of the *Gutierrez* case and the *Aiken* case was clarified to them. The State and local defendants had no monetary interest in the program, and acted at all times in a manner consist-

ent with their professed desire to distribute the maximum amount of food stamp coupons to every eligible applicant as quickly as practicable in conformance with the regulations. The Court finds that plaintiffs' lawsuit was not a contributing factor to any of defendants' actions except in the insignificant respect examined above. The Court recognizes that a mere finding of good faith, which is amply justified on the record, is insufficient to protect defendants from an award of attorneys' fees. However, to award attorneys' fees in this case would be a gross miscarriage of justice in the light of the special circumstances which are here involved.

An appropriate order shall issue.